No. 25-2382

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

CHRISTOPHER MANHART, individually and
on behalf of all others similarly situated,
*Plaintiff-Appellant,*

v.

WESPAC FOUNDATION INC., *et al.*,
*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division
No. 1:24-cv-08209 (Rowland, J.)

## RESPONSE BRIEF OF DEFENDANT-APPELLEE TIDES CENTER

Andrianna D. Kastanek
Precious S. Jacobs-Perry
Ali I. Alsarraf
JENNER & BLOCK LLP
373 North Clark Street
Chicago, IL 60654
(312) 222-9350
akastanek@jenner.com

*Attorneys for Defendant-Appellee Tides Center*

<u>CIRCUIT RULE 26.1 DISCLOSURE STATEMENT</u>

Appellate Court No. <u>25-2382</u>

Short Caption: <u>Christopher Manhart v. WESPAC Foundation, Inc., *et al.*</u>

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> **[x]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    <u>Tides Center doing business as Community Justice Exchange</u>

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the District Court or before an administrative agency) or are expected to appear for the party in this court:

    <u>Jenner & Block LLP</u>

(3)    If the party or amicus is a corporation:

    i)    Identify all of its parent corporations, if any; and
        <u>N/A</u>

    ii)    list any publicly held company that owns 10% or more of the party's or amicus' stock:
        <u>N/A</u>

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases: <u>N/A</u>

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2: <u>N/A</u>

Attorney's Signature <u>/s/ Andrianna D. Kastanek</u>                Date: <u>December 23, 2025 (new)</u>

Attorney's Printed Name: <u>Andrianna D. Kastanek</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes**    <u>X</u>
                                                                                                    **No**

Address:    <u>Jenner & Block LLP, 353 North Clark Street</u>
            <u>Chicago, IL 60654</u>

Phone Number: <u>(312) 840-7285</u>                Fax Number:  <u>(312) 527-0484</u>

E-Mail Address: <u>akastanek@jenner.com</u>

rev. 12/19 AK

i

<u>CIRCUIT RULE 26.1 DISCLOSURE STATEMENT</u>

Appellate Court No. <u>25-2382</u>

Short Caption: <u>Christopher Manhart v. WESPAC Foundation, Inc., *et al.*</u>

      To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

      The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

      **[x]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)      The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

      <u>Tides Center doing business as Community Justice Exchange</u>

(2)      The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the District Court or before an administrative agency) or are expected to appear for the party in this court:

      <u>Jenner & Block LLP</u>

(3)      If the party or amicus is a corporation:

      i)      Identify all of its parent corporations, if any; and
            <u>N/A</u>

      ii)     list any publicly held company that owns 10% or more of the party's or amicus' stock:
            <u>N/A</u>

(4)  Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases: <u>N/A</u>

(5)  Provide Debtor information required by FRAP 26.1 (c) 1 & 2: <u>N/A</u>

Attorney's Signature <u>/s/ Precious S. Jacobs-Perry</u>     Date: <u>December 23, 2025 (new)</u>

Attorney's Printed Name: <u>Precious S. Jacobs-Perry</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes**
                                                               **No**     <u>X</u>

Address:     <u>Jenner & Block LLP, 353 North Clark Street</u>
                  <u>Chicago, IL 60654</u>

Phone Number: <u>(312) 840-8615</u>     Fax Number: <u>(312) 527-0484</u>

E-Mail Address: <u>pjacobs-perry@jenner.com</u>

rev. 12/19 AK

<u>CIRCUIT RULE 26.1 DISCLOSURE STATEMENT</u>

Appellate Court No. <u>25-2382</u>

Short Caption: <u>Christopher Manhart v. WESPAC Foundation, Inc., *et al.*</u>

       To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

       The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

       **[x]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)      The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

       <u>Tides Center doing business as Community Justice Exchange</u>

(2)      The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the District Court or before an administrative agency) or are expected to appear for the party in this court:

       <u>Jenner & Block LLP</u>

(3)      If the party or amicus is a corporation:

       i)      Identify all of its parent corporations, if any; and
         <u>N/A</u>

       ii)     list any publicly held company that owns 10% or more of the party's or amicus' stock:
         <u>N/A</u>

(4)  Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases: <u>N/A</u>

(5)  Provide Debtor information required by FRAP 26.1 (c) 1 & 2: <u>N/A</u>

Attorney's Signature <u>/s/ Ali I. Alsarraf</u>      Date: <u>December 23, 2025 (new)</u>

Attorney's Printed Name: <u>Ali I. Alsarraf</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** _____
                                                           **No** <u> X </u>

Address:      <u>Jenner & Block LLP, 353 North Clark Street</u>
              <u>Chicago, IL 60654</u>

Phone Number: <u>(312) 840-7376</u>      Fax Number: <u>(312) 527-0484</u>

E-Mail Address: <u>aalsarraf@jenner.com</u>

rev. 12/19 AK

# TABLE OF CONTENTS

RULE 26.1 DISCLOSURE STATEMENT ................................................................ i

TABLE OF AUTHORITIES ............................................................................ v

INTRODUCTION ....................................................................................... 1

JURISDICTIONAL STATEMENT ................................................................. 2

ISSUES PRESENTED FOR REVIEW ......................................................... 4

STATEMENT OF THE CASE ....................................................................... 4

STANDARD OF REVIEW ............................................................................. 17

SUMMARY OF ARGUMENT ....................................................................... 17

ARGUMENT ................................................................................................. 19

I.      The District Court Properly Held that Plaintiff Fails to State a Claim Against CJE ................................................................................... 19

       A.      Plaintiff's Conspiracy Claims Are Meritless ....................... 20

       B.      Plaintiff's Aiding and Abetting Claims Are Meritless ......... 22

       C.      The Underlying Tort Claims Are Meritless .......................... 24

             1.      Plaintiff's false imprisonment theory of liability is legally flawed ...................................................................... 24

             2.      Plaintiff's common-law obstruction-of-highway theory of liability is legally flawed. .......................... 32

II.      This Court Should Affirm on the Alternative Ground that Plaintiff Lacks Article III Standing .............................................................................. 37

III.      This Court Should Affirm on the Alternative Ground that the Court Lacks Personal Jurisdiction Over CJE .................................................... 41

IV.      In the Event of Remand, the Court Should Not Direct that the Case be Reassigned Under Circuit Rule 36 ................................................ 44

CONCLUSION .............................................................................................. 46

# TABLE OF AUTHORITIES

Cases

*Access Living of Metropolitan Chicago v. Uber Technologies, Inc.*, 958 F.3d 604 (7th Cir. 2020) ............................................................... 39

*Active Disposal, Inc. v. City of Darien*, 635 F.3d 883 (7th Cir. 2011) ....................... 17

*Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888 (Ill. 1994)................................................ 21

*Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.*, 751 F.3d 796 (7th Cir. 2014) ......................................................... 43

*Ahmed v. Quinn*, 124 F.3d 203, 1997 WL 471335 (7th Cir. 1997) (unpublished table decision) ............................................................... 43

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)........................................................................ 29

*Bachiri v. Medicredit, Inc.*, No. 25-10356, 2025 WL 2803798 (11th Cir. Oct. 2, 2025).............................................................................. 38

*Bank of America, N.A. v. Knight*, 875 F. Supp. 2d 837 (N.D. Ill. 2012), *aff'd*, 725 F.3d 815 (7th Cir. 2013) .......................................................... 22

*Bankers Trust Co. v. Mallis*, 435 U.S. 381 (1978) ....................................................... 3

*Brook v. McCormley*, 873 F.3d 549 (7th Cir. 2017) .................................................... 44

*Calumet River Fleeting, Inc. v. International Union of Operating Engineers, Local 150*, 824 F.3d 645 (7th Cir. 2016) ................................. 3

*Cameron v. Owens-Corning Fiberglas Corp.*, 695 N.E.2d 572 (Ill. App. Ct. 1998).................................................................................. 21

*Clapper v. Amnesty International USA*, 568 U.S. 398 (2013) .................................... 41

*Daimler AG v. Bauman*, 571 U.S. 117 (2014)............................................................. 42

*Dhakal v. Sessions*, 895 F.3d 532 (7th Cir. 2018)....................................................... 37

*Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826 (7th Cir. 2018) ......................... 38

*Ding v. Kraemer*, 376 N.E.2d 266 (Ill. App. Ct. 1978)............................................... 33

*Dupree v. Laster*, 389 F. App'x 532 (7th Cir. 2010) .................................................. 45

*Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351 (2021) ............................................................................................ 42

*Freedom from Religion Foundation, Inc. v. Obama*, 641 F.3d 803 (7th Cir. 2011) ..................................................................................... 15

*Freeman v. MAM USA Corp.*, 528 F. Supp. 3d 849 (N.D. Ill. 2021) ....................... 40

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167 (2000) ................................................................... 38

*Gable v. Universal Acceptance Corp. (WI)*, 338 F. Supp. 3d 943 (E.D. Wis. 2018) .................................................................................. 31–32

*Kalata v. Anheuser-Busch Cos.*, 581 N.E.2d 656 (Ill. 1991) ...................................... 33

*Karow v. Student Inns, Inc.*, 357 N.E.2d 682 (Ill. App. Ct. 1976) ............................ 30

*Kohn v. Laidlaw Transit, Inc.*, 808 N.E.2d 564 (Ill. App. Ct. 2004) ......................... 22

*LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937 (7th Cir. 2010) ................................................................................................. 5

*Liteky v. United States*, 510 U.S. 540 (1994) ................................................................ 44

*Lopez-Aguilar v. Marion County Sheriff's Department*, 924 F.3d 375 (7th Cir. 2019) ................................................................................... 40

*Marcano v. Northwestern Chrysler-Plymouth Sales, Inc.*, 550 F. Supp. 595 (N.D. Ill. 1982) ................................................................... 12, 31

*Martin v. Lincoln Park West Corp.*, 219 F.2d 622 (7th Cir. 1955) ............................ 27

*McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242 (Ill. 1999) .................. 21

*Meerbrey v. Marshall Field & Co.*, 564 N.E.2d 1222 (Ill. 1990) ................................. 25

*Merrilees v. Merrilees*, 998 N.E.2d 147 (Ill. App. Ct. 2013) ................................. 21, 22

*Morris v. Faulkner*, 361 N.E.2d 112 (Ill. App. Ct. 1977) ................................. 25, 26, 30

*Murthy v. Missouri*, 603 U.S. 43 (2024) ....................................................................... 39

*Nayak v. Farley*, 763 F. App'x 570 (7th Cir. 2019) ....................................................... 3

*North v. Ubiquity, Inc.*, 72 F.4th 221 (7th Cir. 2023) ............................................ 42, 44

*Northern Grain Marketing, LLC v. Greving*, 743 F.3d 487 (7th Cir. 2014)................................................................................................ 42–43

*Palausky v. Landers*, 385 N.E.2d 751 (Ill. App. Ct. 1978) ......................................... 37

*Passarella v. NFI Interactive Logistics, LLC*, No. 12 C 4147, 2015 WL 4148674 (N.D. Ill. July 9, 2015) ............................................................. 34

*Pennell v. Global Trust Management, LLC*, 990 F.3d 1041 (7th Cir. 2021)................................................................................................ 38

*Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773 (7th Cir. 2003)................................................................................. 42, 43

*Randall v. Lemke*, 726 N.E.2d 183 (Ill. App. Ct. 2000) ............................................ 26

*Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688 (7th Cir. 2015) .................... 38

*Robinson v. Miller*, No. 4-84-0611, 1985 Ill. App. LEXIS 2179 (Ill. App. Ct., May 14, 1985) ........................................................................... 12, 31

*Samuels v. Wilder*, 906 F.2d 272 (7th Cir. 1990)..................................................... 45

*Shank v. H.C. Fields*, 869 N.E.2d 261 (Ill. App. Ct. 2007)......................................... 36

*Simic v. City of Chicago*, 851 F.3d 734 (7th Cir. 2017) ............................................. 40

*Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26 (1976) ......................................................................................................... 40

*Simpkins v. CSX Transportation, Inc.*, 965 N.E.2d 1092 (Ill. 2012) ......................... 35

*Snyder v. Phelps*, 562 U.S. 443 (2011) .................................................................... 36

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016)................................................. 13, 38, 39

*Squires-Cannon v. Forest Preserve District of Cook County*, 897 F.3d 797 (7th Cir. 2018)............................................................................................. 24

*Tamburo v. Dworkin*, 601 F.3d 693 (7th Cir. 2010) ............................................ 43, 44

*Trevino v. Flash Cab Co.*, 651 N.E.2d 723 (Ill. App. Ct. 1995) ...................... 25, 27, 30

*Triad Associates, Inc. v. Chicago Housing Authority*, 892 F.2d 583 (7th Cir. 1989), *abrogated on other grounds by Board of County Commissioners v. Umbehr*, 518 U.S. 668 (1996) .................................................. 45

*Umble v. Sandy McKie & Sons, Inc.*, 690 N.E.2d 157 (Ill. App. Ct. 1998) ............... 23

*In re United States*, 572 F.3d 301 (7th Cir. 2009) ...................................................... 44

*United States v. All Funds on Deposit with R.J. O'Brien & Associates*,
    783 F.3d 607 (7th Cir. 2015) ...................................................... 38

*United States v. Alvarez*, 567 U.S. 709 (2012) ........................................................... 37

*United States v. Grace*, 461 U.S. 171 (1983) ............................................................... 36

*Vodak v. City of Chicago*, 624 F. Supp. 2d 933 (N.D. Ill. 2009), *rev'd on
    other grounds by* 639 F.3d 738 (7th Cir. 2011) ...................................................... 36

*Warth v. Seldin*, 422 U.S. 490 (1975) ......................................................................... 40

STATUTES

625 ILCS 5/4-201 .......................................................................................... 11, 29

625 ILCS 5/4-201(b) .......................................................................................... 29

625 ILCS 5/11-208(a)(2) .......................................................................................... 14

625 ILCS 5/11-1416 .......................................................................................... 8, 14, 34

18 U.S.C. § 3141 .......................................................................................... 24

28 U.S.C. § 1291 .......................................................................................... 3

28 U.S.C. § 1332(d) .......................................................................................... 2, 3

OTHER AUTHORITIES

7th Cir. R. 36 .......................................................................................... 44

Amaryllis Austin, *The Presumption for Detention Statute's Relationship
    to Release Rates*, U.S. Courts (Sept. 2017) ...................................................... 24

Community Justice Exchange, *About Us*,
    https://www.communityjusticeexchange.org/en/about-us (last
    visited Dec. 23, 2025) ...................................................... 5

Community Justice Exchange, *Directory of Community Bail Funds*,
    https://www.communityjusticeexchange.org/en/nbfn-directory (last
    visited Dec. 23, 2025) ...................................................... 5

Illinois Legal Aid Online, *Cash Bail Changes - 2023 SAFE-T Act*,
    https://www.illinoislegalaid.org/legal-information/cash-bail-
    changes-2023-safe-t-act (last visited Dec. 23, 2025) ...................................................... 6

Ill. Sup. Ct. R. 23 ............................................................................ 31

Law Office of the Cook County Public Defender, *Public Defender Frequently Asked Questions*, https://www.cookcountypublicdefender.org/Resources/public-defender-faq (last visited Dec. 23, 2025) ............................................. 7

William Prosser et al., *Prosser and Keeton on Torts* (5th ed. 1984) ........................ 26

Restatement (Second) of Torts § 36 (1965) .................................................... 26, 27, 28

Restatement (Third) of Torts § 7(c) (Tentative Draft No. 3, 2018) ............................ 25

Restatement (Third) of Torts § 8 (Tentative Draft No. 3, 2018) ................................ 30

**INTRODUCTION**

On April 15, 2024, protesters blocked traffic on the highway near O'Hare Airport for approximately two-and-a-half hours in one of over 80 similar protests carried out that day as part of a non-violent civil disobedience effort. Plaintiff-Appellant Christopher Manhart alleges that the protest caused him to be stuck in traffic. Invoking strained theories of Illinois tort law on behalf of a putative class, Plaintiff seeks to hold a wide range of defendants, including non-profit organizations, financially responsible for his so-called false imprisonment and an invented tort he calls "obstruction of a highway." He also seeks an injunction to preclude recurrence of Defendants' alleged conduct.

Defendant Community Justice Exchange ("CJE") is a fiscally sponsored project of the California-based non-profit organization the Tides Center.[1] Dedicated to criminal justice reform, one of CJE's missions is to support access to cash bail and legal representation for protesters nationwide through the creation of bail funds.[2] One such fund (the "Bail Fund") was established in April 2024 to support those arrested for their involvement in pro-Palestinian protests across the country. Plaintiff does not allege that any of the protesters who purportedly blocked traffic in

---

[1] All references to CJE in this brief are to allegations about Tides Center doing business as CJE, as alleged in the second amended complaint.

[2] The other Defendants-Appellants named in the second amended complaint are WESPAC Foundation Inc., National Students for Justice in Palestine, Jewish Voice for Peace, Dissenters, Jinan Chehade, Superior Murphy, Rifqa Falaneh, and Simone Tucker, which CJE refers to collectively (with CJE) as "Defendants." This brief is being filed on behalf of CJE only, but it is CJE's understanding that the other Defendants filing individual briefs may adopt this brief in whole or in part.

Chicago on April 15, 2024, had contact with CJE—or that these individuals received funds from CJE's Bail Fund. Indeed, Illinois abolished cash bail in 2023, so no one involved in the Illinois protest would have stood to benefit from the Bail Fund. Plaintiff nonetheless seeks to hold CJE financially responsible for alleged torts committed at the protest on I-190, relying on extraordinarily broad theories of tort law, and conspiracy and aiding and abetting liability, that flout well-established law.

Plaintiff cites no precedent—in Illinois or elsewhere—holding an individual liable (under *any* cause of action) for intentionally blocking highway traffic, much less holding liable a wholly unaffiliated non-profit organization. As the district court held in dismissing Plaintiff's complaint, such a holding would transform conduct that Illinois has long addressed as a matter of public law into a basis for limitless private lawsuits to the tune of millions of dollars. This Court should reject Plaintiff's strained theories and affirm.

## JURISDICTIONAL STATEMENT

Plaintiff's jurisdictional statement is not complete and correct.

On September 9, 2024, Plaintiff filed a putative class action complaint, invoking jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). R.1.[3] Plaintiff filed the operative second amended complaint on January 29, 2025. A45–81 ("SAC"). As required by CAFA, the proposed class consists of at least 100 members; there is diversity between at least one of the Defendants and at

---

[3] CJE cites the electronic record on appeal as "R." followed by document and page number. It cites Plaintiff's opening brief as "Op. Br." and the appendix attached to Plaintiff's opening brief as "A." It cites the docket in this Court as "Dkt."

least one class member; and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. A48, A66; 28 U.S.C. § 1332(d). As explained below, however, the district court lacked jurisdiction because Plaintiff did not sufficiently plead Article III standing. *See supra* Argument, Part II. The district court also lacked personal jurisdiction over CJE. *See supra* Argument, Part III.

On August 7, 2025, the district court issued a minute entry (A41) and memorandum opinion and order (A1–40) dismissing all claims in Plaintiff's second amended complaint with prejudice.[4] On August 8, 2025, Plaintiff timely filed a notice of appeal. A42–44. The parties agree that the district court's dismissal of Plaintiff's claims with prejudice is final and appealable notwithstanding that the district court arguably did not set out the judgment in a separate document pursuant to Federal Rule of Civil Procedure 58(a).[5] Dkt. 13 at 2–3; Dkt. 8. This Court therefore has jurisdiction under 28 U.S.C. § 1291.

---

[4] The district court also awarded sanctions, but its sanctions ruling is not yet final and appealable until the amount of sanctions is determined. *Cf. Nayak v. Farley*, 763 F. App'x 570, 572 (7th Cir. 2019) (Rule 11 sanctions become appealable when an order "clearly specifies (1) who is to pay the sanction, (2) who is to receive it, and (3) the amount"). The issue of sanctions therefore remains with the district court while this appeal proceeds in this Court.

[5] As explained in Defendants' August 19, 2025 filing (Dkt. 13), while the district court's minute order (A41) arguably does not constitute a separate judgment satisfying Federal Rule of Civil Procedure 58(a), any noncompliance with Rule 58(a) is not a jurisdictional defect where other sources reflect that the district court's decision is final, as they do here. *See Bankers Tr. Co. v. Mallis*, 435 U.S. 381, 384-85, 385 n.6 (1978); *Calumet River Fleeting, Inc. v. Int'l Union of Operating Eng'rs, Loc. 150*, 824 F.3d 645, 650 (7th Cir. 2016).

## ISSUES PRESENTED FOR REVIEW

1.     Whether the district court properly dismissed Plaintiff's second amended complaint with prejudice for failure to state a claim where: (a) the complaint does not plausibly allege any agreement between CJE and any other purported conspirator, as required to plead conspiracy liability; (b) the complaint does not plausibly allege that CJE knowingly and substantially assisted any alleged tortious conduct, as required to plead aiding and abetting liability; and (c) Plaintiff's underlying tort theories are legally flawed.

2.     Whether this Court should affirm on the alternative ground that Plaintiff lacks Article III standing where the alleged harms were in the form of harassment, annoyance, and a general loss of time; those harms are not traceable to any conduct by CJE; and, separately, Plaintiff does not allege a real and immediate threat of future harm to support standing to seek injunctive relief.

3.     Whether this Court should affirm on the alternative ground that the district court lacked personal jurisdiction over CJE, a fiscally sponsored project of a California-based non-profit organization, where Plaintiff's second amended complaint contains no allegations of any forum-related activities by CJE.

## STATEMENT OF THE CASE

### *Factual Allegations As to CJE*

A fiscally sponsored project of the Tides Center, a California-based 501(c)(3) non-profit organization, CJE supports organizations "experimenting with" power-

building "interventions" in the criminal justice system.[6] In line with its mission, CJE maintains a list of over 90 bail funds and hosts the National Bail Fund Network. In addition, its website provides that, "during local and national protests, specific protest bail funds may be established."[7]

On April 15, 2024, protesters blocked a portion of the I-190 highway leading to Chicago's O'Hare airport between 7:00 a.m. and 9:30 a.m. SAC ¶¶ 65–66. Plaintiff alleges that the protesters did so as part of a multi-city economic blockage in solidarity with Palestine called "A15 Action." *Id.* ¶¶ 52, 54. Plaintiff further alleges that A15 Action was organized at the behest of Hamas and the Iranian Revolutionary Guard Corps ("IRGC"), which are designated foreign terrorist organizations under U.S. law. *Id.* ¶¶ 26, 52–55.

Implying that Defendants are terrorists or supported terrorism, Plaintiff alleges that "[t]he tortious conduct at issue derives from the generational conflict between Hamas and Israel . . . , which Hamas has now exported to the United States," *id.* at 9; that Hamas' October 7, 2023 attack on Israel was the deadliest in Israel's history, "killing almost 1,200 Israelis, most of them innocent civilians, and taking even more hostage (including some Americans living in Israel)," *id.* at 10; that "Hamas soldiers use innocent Palestinian non-combatants as human shields and

---

[6] Community Justice Exchange, *About Us*, https://www.communityjustice exchange.org/en/about-us (last visited Dec. 23, 2025); *LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 944 n.3 (7th Cir. 2010) (noting the Court may take judicial notice of the contents of a website).

[7] Community Justice Exchange, *Directory of Community Bail Funds*, https://www.communityjusticeexchange.org/en/nbfn-directory (last visited Dec. 23, 2025).

intercept aid trucks to resell supplies for profit," *id.* ¶ 34; and that "the IRGC issued an internal memorandum entitled 'Supporting and Encouraging Palestinian Movements towards the Political Isolation of Zionism' that called for 'an economic blockade across four continents in solidarity with Palestinians' to take place on April 15, 2024," *id.* ¶ 52. Notwithstanding these inflammatory allegations, Plaintiff cites not a single fact that would make them relevant to CJE, or that would possibly tie CJE to Hamas or the IRGC.

Instead, Plaintiff's sole allegation about CJE is that CJE created, helped advertise, and managed a protest bail fund—the Bail Fund—"to incentivize participation" in so-called "A15 Action blockades and to ensure activists arrested for violations of state and federal criminal law. … could … mount a more competent legal defense" and post bail. *Id.* ¶ 63. Specifically, Plaintiff alleges that, in April 2024, CJE created the Bail Fund "to support community members who are criminalized in the U.S. for their solidarity with Palestine."[8] *Id.* ¶ 63. A link to the Bail Fund was posted on a15action.com, a website created as part of a worldwide civil disobedience effort. *Id.* ¶¶ 56–57.

Plaintiff does not—and could not—allege that the Bail Fund was directed at Illinois because, as relevant to this lawsuit arising out of a Chicago-based protest, Illinois abolished cash bail in 2023,[9] and the Cook County Public Defender represents

---

[8] Solely for purposes of this appeal, CJE treats the factual allegations in the second amended complaint as true.

[9] Illinois Legal Aid Online, *Cash Bail Changes - 2023 SAFE-T Act*, https://www.illinoislegalaid.org/legal-information/cash-bail-changes-2023-safe-t-act (last visited Dec. 23, 2025).

criminal defendants who cannot afford an attorney.[10] Apparently in light of this reality, Plaintiff alleges that "the statute of limitations has not yet run for possible federal prosecution," and that "[f]ederal law provides for cash bail." *Id.*

## Procedural History

### Second Amended Complaint

Plaintiff's second amended complaint, filed on January 29, 2025,[11] alleges that the April 15, 2024 protest on the I-190 highway falsely imprisoned him and caused an obstruction of the highway, in violation of Illinois law. Plaintiff alleges that he "was en route to a flight … for a business trip" on April 15, *id.* ¶ 76; "was frozen on the highway for well over an hour, unable to move or navigate out of the traffic jam," and "was also too far away from the blockade to simply get out of his car and walk to the airport (plus that would have required abandoning his car)," *id.*; and that "[a]s a result of being stuck in traffic, Plaintiff missed his flight that morning and spent the next several hours re-booking his flight," *id.* ¶ 79. Missing his flight, in turn, allegedly caused Plaintiff to miss "an important work dinner and networking session." *Id.*

While admitting that "[s]everal passengers exited stopped … vehicles … and

---

[10] Law Office of the Cook County Public Defender, *Public Defender Frequently Asked Questions*, https://www.cookcountypublicdefender.org/Resources/public-defender-faq (last visited Dec. 23, 2025).

[11] Plaintiff voluntarily amended the original complaint on November 11, 2024 (Dkt. 33), in response to counsel for WESPAC sending Plaintiff's counsel a letter stating WESPAC's intent to move for sanctions under Federal Rule of Civil Procedure 11 (*see* A6). The district court later granted Plaintiff's motion for leave to file a further amended complaint. R.68. The operative complaint is the second amended complaint, the allegations of which are substantially similar to those in Plaintiff's earlier complaints. *See* A7.

walked … to the terminals," *id.* ¶ 75, Plaintiff claims that the protest caused him a "[l]oss of personal freedom," unspecified "[l]ost business opportunities," "[a]nnoyance, inconvenience, and physical discomfort, anxiety and emotional distress," and "[l]oss of time having to rearrange travel plans after missing his flight," *id.* ¶¶ 96, 108, 116, 123, 130, 137, 144.

Plaintiff named as Defendants four individuals who allegedly were present at the protest and participated in blocking traffic, *id.* ¶¶ 65, 67, and five entities purportedly connected to the A15 Action protests: (1) Tides Center doing business as CJE, *id.* ¶ 64; (2) Jewish Voice for Peace, Inc. (JVP), a non-profit 501(c)(3) based in California with multiple chapters across the United States (including one in Chicago) that allegedly participated in organizing the A15 Action protests, *id.* ¶¶ 16, 60; (3) National Students for Justice in Palestine (NSJP), an unincorporated association that also allegedly participated in organizing the A15 Action protests, *id.* ¶¶ 13, 60; (4) WESPAC Foundation, which allegedly served during the relevant period as the fiscal sponsor to NSJP, *id.* ¶ 14; and (5) Dissenters, a 501(c)(3) nonprofit based in Chicago that allegedly helped organize the I-190 protest and select the location of the blockade, *id.* ¶¶ 15, 61.

Plaintiff's second amended complaint contains nine counts, four of which are relevant to CJE. Plaintiff alleges that CJE: (1) participated in a conspiracy to obstruct a highway, in violation of the Illinois Vehicle Code, *see* 625 ILCS 5/11-1416 (Count V); (2) participated in a conspiracy to commit the tort of false imprisonment (Count VI); (3) aided and abetted the alleged obstructing of a highway (Count VII); and

(4) aided and abetted the alleged false imprisonment (Count VIII), all in violation of Illinois law.[12] Purporting to act on behalf of a class of similarly situated individuals, Plaintiff seeks "compensatory and punitive damages" in the amount of $36 million, as well as "injunctive relief prohibiting Defendants from further engaging in the unlawful conduct." A79.

### *Defendants' Motion to Dismiss*

Defendants moved to dismiss. R.73, R.75, R.78, R.80, R.82. Pertinent here, CJE argued that Plaintiff's second amended complaint did not state a claim for conspiracy to commit or for aiding and abetting false imprisonment or obstruction of a highway. R.74 at 8–12. Specifically, CJE argued that Plaintiff did not plausibly allege an agreement between CJE and anyone else to commit tortious conduct, as required to state a conspiracy claim, or that CJE substantially assisted any alleged tortious conduct, as required to state an aiding and abetting claim. *Id.* at 9–10. CJE also argued that Plaintiff failed to state a claim for false imprisonment or obstruction of a highway. *Id.* at 10–12. In the alternative, CJE argued that Plaintiff did not plausibly allege a concrete injury necessary to confer Article III standing or a real and immediate threat of future injury necessary to pursue injunctive relief. *Id.* at 6–8. CJE also argued that the district court lacked personal jurisdiction over it because Tides Center (which sponsors CJE) is a California entity incorporated in and with its

---

[12] The substantive tort counts underlying the conspiracy and aiding and abetting claims are Counts I (false imprisonment) and II (common-law tort for foreseeable injury caused by intentional breach of duty). CJE is not named in the substantive counts.

principal place of business in California, and because Plaintiff did not allege that Tides Center or CJE acted within or targeted Illinois. *Id.* at 12–15.

### District Court's Dismissal Order

On August 7, 2025, the district court granted Defendants' motions to dismiss with prejudice. A1–40. It held that Plaintiff failed to state tort claims pursuant to Federal Rule of Civil Procedure 12(b)(6). A10, A20, A23, A25. Because the underlying conduct alleged was not tortious, Plaintiff's claims for civil conspiracy and aiding and abetting against CJE and the other Defendants also failed. A25–26.

We discuss in turn the district court's rulings as to each of the purported torts underlying Plaintiff's conspiracy and aiding and abetting claims:

**False Imprisonment (Counts VI and VIII)**. The district court first held that Plaintiff failed to state a claim for false imprisonment and therefore a claim for conspiracy or aiding and abetting liability premised on the tort of false imprisonment. False imprisonment requires more than that Plaintiff "felt 'compelled' to remain in" a place; "the evidence must establish a restraint against the plaintiff's will, as where she yields to force, to the threat of force or the assertion of authority." A10 (quoting *Lopez v. Winchell's Donut House*, 466 N.E.2d 1309, 1312 (Ill. App. Ct. 1984)). The district court agreed with Defendants that, even if Plaintiff was prevented from "proceeding down I-190, they did not 'confine' him to his car or anywhere else," as that term is defined by Illinois law. A10.

The district court explained that the Restatement (Second) of Torts ("Second Restatement"), which Illinois courts have long applied, specifically provides that "one

who blocks off a highway, intending to prevent the public from passing along it, is not liable for false imprisonment to one whose privilege to use the highway has been thus denied." A10–11 (emphasis omitted) (quoting Second Restatement § 36 cmt. d & § 36(3) (1965)). This rule holds true, according to the Restatement, even where the defendant purportedly "intentionally prevent[ed] another from going in a particular direction in which he has a right or privilege to go." A11. Thus, even if Plaintiff "felt justified in staying in his car" under the circumstances, he was not "involuntarily confined ... there." A15.

The district court recognized that cars "appearing behind [Plaintiff] on the highway" may have been "tantamount to Defendants 'put[ing]' an obstacle in the way of his leaving," A13 (quoting Second Restatement § 36, illus. 11), but explained that

> [a]dopting Plaintiff's reading requires believing that the drafters of the Restatement were unaware that a traffic jam might result from an obstructed highway and that travelers might be temporarily stuck in traffic as a result. Plaintiff cites no legal authority for the proposition that a defendant who blocks an individual from travelling in only one direction can be liable for false imprisonment if other individuals who the defendant does not control subsequently prevent the plaintiff from exiting in another direction.

*Id*. Likewise, although Plaintiff claimed he could not leave his car unattended on the highway without penalty, the district court viewed his argument as "misunderstand[ing]" the analysis: "The existence of a reasonable means of escape is a basis to find that a defendant was *not* confined," even if the conditions of such escape imposed additional costs on Plaintiff.[13] A14 ("Whatever conditions prevented Plaintiff

---

[13] The district court also noted Plaintiff's mistaken reliance on 625 ILCS 5/4-201 of the Illinois Vehicle Code, which "prohibits abandoning a vehicle on a public highway

from exiting his car on the highway are present every time Plaintiff is in his car on the highway; Defendants did not impose them on Plaintiff."); *see also* A15 (analogizing Plaintiff's allegations to the fact pattern in *Marcano v. Northwestern Chrysler-Plymouth Sales, Inc.*, 550 F. Supp. 595, 603 (N.D. Ill. 1982), where a dealership's wrongful withholding of plaintiff's keys was not false imprisonment because the plaintiff could voluntarily leave the dealership without her car).

The district court next rejected Plaintiff's reliance on the unpublished 40-year-old case of *Robinson v. Miller*, No. 4-84-0611, 1985 Ill. App. LEXIS 2179 at *8–9 (Ill. App. Ct. May 14, 1985). A11. In addition to *Robinson* being non-precedential, the district court explained, it involved a person confined to their *own land* by the act of another, which the Restatement specifically provides is actionable. A11–12 (quoting Second Restatement § 36 cmt. d (noting "obstruction of a highway is an actionable wrong to" one whose "right of access to his" home is "deprive[d]")). The district court also rejected Plaintiff's argument that the Restatement imposes a temporal condition—that is, that it purportedly describes a scenario where a driver is prevented from entering an already-blocked highway, not one where a blockade impedes a driver who is already on the highway. A12. The court explained that comment d of the Restatement suggests no such limitation, and in any event, Plaintiff alleges that he was only stuck in traffic for "over an hour," whereas the blockade

---

… [b]ut … defines an 'abandoned vehicle' narrowly to include only one that 'is in a state of disrepair rendering the vehicle incapable of being driven in its condition' or one that 'has not been moved or used for 7 consecutive days or more and is apparently deserted.'" A14 (quoting 625 ILCS 5/1-101.05).

lasted for "almost three hours." A12 n.5. This suggests that the protest had been going for at least an hour before Plaintiff drove into the traffic it produced. *Id.*

To allow a false imprisonment claim to proceed notwithstanding these deficiencies, the district court concluded, "would stretch the tort of false imprisonment beyond recognition and supplant the common law's—and Illinois's—long-established limitations on claims meant to vindicate public rights." A18. Under the common law, adopted by Illinois, "the tort of public nuisance existed to vindicate the rights violated when someone tortiously obstructed a public highway,"[14] but it requires a plaintiff to prove "some extraordinary damage" beyond that "suffered by the public." A15–16 (quoting 3 William Blackstone, *Commentaries* (1768) *135-36; *David M. Swain & Son v. Chi., B. & Q.R. Co.*, 97 N.E. 247, 248-49 (Ill. 1911)). The district court concluded that "loss of time, business engagements, and the like" do not qualify—no matter how long the delay—because those are "'merely an injury to the public right to use the street,' rather than one to any individual." A16 (quoting *Swain*, 97 N.E. at 248-49); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 345 (2016) (Thomas, J., concurring) (public rights include "passage on public highways") (citation omitted).

***Obstruction of Highway (Counts V and VII).*** The district court also held Plaintiff had not stated a common-law tort for foreseeable injury caused by intentional breach of duty, as alleged in Count II, and therefore had not stated a claim for conspiracy or aiding and abetting liability premised on that tort. A18–26.

---

[14] While Plaintiff's first two complaints contained claims for public nuisance, the second amended complaint does not. *See* A17.

The court began by explaining that, while 625 ILCS 5/11-1416 makes it unlawful to hinder or obstruct one from driving on Illinois highways, a plaintiff can bring a civil claim for violation of a public safety statute only in narrow circumstances: where: (i) the statute is "designed to protect public safety," and (ii) violation of the statute was the proximate cause of an injury that "implicate[s] public safety." A19–20. After observing that it is "not clear" that 625 ILCS 5/11-1416 was "enacted as a public *safety* measure," rather than as a "measure to facilitate the free flow of pedestrian traffic," A20 (quoting *Cecola v. Ill. Bell Tel. Co.,* 264 N.E.2d 809, 813 (Ill. App. Ct. 1970)), the district court assumed, *arguendo*, that the statute fulfilled this requirement. Even with that assumption, however, the court held that Plaintiff had not sufficiently pled that Defendants proximately caused an injury that implicated public safety. A20–21. Getting "caught in traffic" and "miss[ing] a networking event" both fall well short of a public safety injury. *Id*. (rejecting Plaintiff's argument that traffic "could have prevented emergency vehicles from responding to various emergencies" as a nonactionable "hypothetical" injury to someone else).

The district court also rejected Plaintiff's argument that the court could "imply a private right of action" under 625 ILCS 5/11-1416. A21–23. The Code enables "local authorities with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power" to "[r]egulat[e] traffic by means of police officers." 625 ILCS 5/11-208(a)(2). This is an adequate enforcement mechanism, the court concluded, that precludes a private right of action. A22–23.

***Standing and Personal Jurisdiction***. While holding that Plaintiff failed to state a claim against Defendants, the district court declined to reach Defendants' alternative arguments on personal jurisdiction or to credit Defendants' alternative arguments on Article III standing.

The district court acknowledged but did not address Defendants' personal jurisdiction arguments, noting only that dismissal was appropriate for the independent reason of failure to state a claim. A9 n.4.

As for standing, the district court acknowledged the cases holding that the kinds of injuries alleged by Plaintiff here—annoyance, inconvenience, and stress—are not concrete for Article III purposes, and that Plaintiff had not cited "any legal source or historical authority suggesting that the tort of false imprisonment was ever used at common law in any factual circumstances bearing any resemblance to his claim here." A28. Nonetheless, the district court credited an argument not made by Plaintiff: that under *Freedom from Religion Foundation, Inc. v. Obama*, 641 F.3d 803, 807 (7th Cir. 2011), "loss of time is sufficient to confer standing." A29. Without separately analyzing standing as to each Defendant (that is, whether the alleged injuries are fairly traceable to the alleged conduct of each Defendant) or as to each form of relief sought (that is, whether the alleged injury arising from a single protest in April 2024 establishes standing to seek prospective injunctive relief), the court concluded that Plaintiff's allegations that he incurred costs in time and money were "sufficient to confer standing." A29.

### District Court's Sanctions Order

In addition to dismissing Plaintiff's claims with prejudice, the district court granted Defendants' motions for Rule 11 sanctions. "The [second amended complaint] is rife with allegations that are irrelevant to Plaintiff's stated causes of action," the district court explained, "and which are only a hair's breadth away from calling Defendants terrorists and placing the loss of innocent lives at their feet." A34. As an example, the court cited allegations from the second amended complaint that Defendants acted "as Hamas's propaganda arm in the United States," and Plaintiff's request in an earlier complaint that the court "punish[] [Defendants] without remorse or hesitation." *Id.* (citations omitted). It also cited accusations by think tank the Manhattan Institute—in an article cited "extensively" by Plaintiff in his district court filings—that Defendants engaged in "civil terrorism," are "anti-Western," and should be denaturalized or deported. A35. Given this inflammatory rhetoric, the district court found that "Plaintiff's filings were presented for the improper purpose of harassment." A34.

In addition, while noting that Plaintiff's legal theories were not *per se* frivolous due to being novel, the district court stated it was "troubled by the frivolity of several of Plaintiff's legal arguments" and by Plaintiff's "false representations of law in support of his novel legal arguments." A35–36. For example, in arguing that "Illinois law had 'superseded' *comment d* of § 36 of the Restatement," Plaintiff "relied exclusively on an unpublished case with no relevant precedential value that in fact comported with *comment d.*" A36. As another example, Plaintiff claimed "625 ILCS

5/4-201 would have made it illegal for Plaintiff to exit his car during the blockade" but failed to conduct a reasonable inquiry into the definition of an abandoned car under the statute. *Id*. And Plaintiff's approach to the causes of action pled in his complaint was to "throw spaghetti at the wall and see what sticks," requiring both Defendants and the district court to "shadowbox[ ] a myriad of possible arguments to support a legal theory that Plaintiff was not able to sufficiently articulate himself." A38.

As noted above, the amount of sanctions has not yet been determined, so the issue of sanctions remains with the district court.

## STANDARD OF REVIEW

This Court reviews *de novo* the district court's dismissal for Plaintiff's failure to state a claim and related issues of law. *Active Disposal, Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011).

## SUMMARY OF ARGUMENT

The Court should affirm the district court's dismissal of the second amended complaint for three independent and sufficient reasons: (1) Plaintiff has not stated a valid claim against CJE; (2) Plaintiff lacks Article III standing; and (3) the district court lacks personal jurisdiction over CJE.

*First*, the district court correctly concluded that Plaintiff has not stated a claim against CJE. The second amended complaint's sole theory as to CJE is that CJE allegedly created, advertised, and managed a nationwide bail fund to promote access to cash bail and legal representation for protesters, which according to Plaintiff makes CJE liable for any and all torts allegedly committed by any and all protesters.

17

Plaintiff advocates for this rule even though he identifies no contact between CJE and the protesters in this case, he identifies no connection between CJE and events in Chicago, which has no cash bail, and he does not allege that CJE's Bail Fund played any part in any protester's decision to block I-190. This Court should reject Plaintiff's invitation to open the floodgates of civil liability. To find a valid conspiracy or aiding and abetting liability based on Plaintiff's allegations would represent a dramatic expansion of those doctrines. And to find a valid tort would subject anyone organizing traffic-inducing events in Chicago—from concerts to sports games—to liability for false imprisonment. That is not the law, and its consequences would be extreme.

The Second Restatement and Illinois law say that blocking a highway is not actionable as false imprisonment. Plaintiff has likewise failed to state a claim for obstruction of a highway because there is no such cause of action under Illinois law. Even construed generously as one for negligence premised on the violation of a public safety statute, Plaintiff's alleged injuries are not of the kind a public safety statute is designed to protect against. And, while the second amended complaint cannot be fairly read to plead a claim for negligence premised on breach of a common-law duty of care, such a claim would fail because Defendants did not owe a common-law duty to Plaintiff.

*Second*, the Court should affirm on the alternative ground that Plaintiff lacks Article III standing to sue CJE, as well as to pursue injunctive relief. The injuries alleged are in the form of harassment, annoyance, and a general loss of time, which are not (without more than what is alleged here) cognizable concrete injuries in fact.

And even assuming injury, Plaintiff has failed to allege that his purported injuries are traceable to CJE. Again, the second amended complaint alleges only that CJE created a nationwide bail fund, which could not have incentivized anyone to do anything in Chicago, where protesters facing arrest would have no need for cash bail or funds for legal representation. Separately, Plaintiff has failed to show a risk of future injury—a prerequisite for standing to pursue injunctive relief.

*Third*, this Court should affirm on the alternative ground that there is no basis for exercising personal jurisdiction over CJE, a fiscally sponsored project of a California entity (Tides Center) that is not alleged to have acted in or targeted Illinois in any way. The sparse CJE-specific allegations provide no basis for subjecting CJE or Tides Center to suit in Illinois.

## ARGUMENT

## I.    The District Court Properly Held that Plaintiff Fails to State a Claim Against CJE.

Plaintiff's civil conspiracy and aiding and abetting claims against CJE are factually insufficient and legally flawed.[15] Factually, Plaintiff fails to plausibly allege an agreement between CJE and any other conspirator. He also fails to plausibly allege that CJE substantially assisted another's wrongdoing. Plaintiff's theory of liability appears to be that CJE's alleged creation and maintenance of a nationwide

---

[15] Of course, the Court cannot reach the question of whether Plaintiff has stated a claim under Rule 12(b)(6) without first assuring itself of subject-matter jurisdiction, which CJE contests. Even so, CJE addresses the Rule 12(b)(6) issues first in this brief because the district court dismissed on that basis, A40, after concluding it had jurisdiction, A27–29. CJE's jurisdictional arguments follow in Parts II and III.

bail fund to promote access to cash bail and legal representation gives rise to accessorial liability for any torts committed by individuals who engage in protests anywhere in the United States, even absent a conspiratorial agreement—and even absent any alleged contact between the fund's organizers and the allegedly tortious actors. This is not the law.

The claims against CJE fail for the separate and independent reason that, as the district court held, Plaintiff's two underlying tort claims are legally untenable. A25–26. There was no false imprisonment under the alleged facts: Plaintiff was stuck in traffic, not imprisoned in his car. And there is no such thing as an "obstruction of the highway" tort, whether under the Illinois Vehicle Code, common law, or Illinois's negligence doctrine.[16]

## A.    Plaintiff's Conspiracy Claims Are Meritless.

Pleading a civil conspiracy under Illinois law requires "a combination of two or more persons for the purpose of accomplishing by some concerted action either an

---

[16] Neither amicus brief submitted in support of Plaintiff offers a persuasive basis for reversal, either as to the merits of the underlying tort claims or the viability of the conspiracy and aiding and abetting claims against CJE. Because this case involves the application of Illinois law, the brief submitted by several States but not joined by Illinois is of little value; the States merely reiterate Plaintiff's own arguments in favor of false imprisonment liability on these facts and reinforce that the true concern animating this lawsuit is not the inconvenience of being stuck in traffic but disagreement with the cause the protesters advocated. *See* Dkt. 28, Brief of Iowa and 11 Other States as *Amici Curiae* Supporting Plaintiff-Appellant at 1, 5–12 (Oct. 14, 2025). The brief submitted by the Manhattan Institute puts an even finer point on the purpose of this lawsuit, labeling non-violent protesters as "civil terrorists" and praising Plaintiff's lawsuit as a means to "raise the cost of continuing" similar protest activity. *See* Dkt. 32, Brief of *Amici Curiae* Manhattan Institute and Tal Fortgang in Support of Plaintiff-Appellant and Reversal at 6, 8 (Oct. 16, 2025).

unlawful purpose or a lawful purpose by unlawful means," in furtherance of which one of the conspirators committed an overt tortious or unlawful act.[17] *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994). While an agreement "is not itself a tort"—"[t]here must be some tortious act or acts performed in furtherance of the agreement," *Cameron v. Owens-Corning Fiberglas Corp.*, 695 N.E.2d 572, 577 (Ill. App. Ct. 1998)—"[t]he agreement is 'a necessary and important' element" of a civil conspiracy claim, *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999) (citation omitted).

Plaintiff fails to plead a conspiratorial agreement between CJE and any other alleged conspirator, in furtherance of which a conspirator purportedly committed an overt tortious act. Plaintiff alleges no specific facts from which it can be inferred that CJE knew of and agreed to participate in the alleged false imprisonment of Plaintiff and the alleged obstruction of I-190. He alleges that CJE created, advertised, and managed the Bail Fund, which allegedly incentivized participation in the protest. But "[a] complaint must do more than merely characterize a combination of acts as a conspiracy to survive a motion to dismiss." *Merrilees v. Merrilees*, 998 N.E.2d 147, 162 (Ill. App. Ct. 2013). And here, Plaintiff does not allege that CJE entered into an agreement with any specific protester, or anyone else.

---

[17] Because a conspiracy requires an agreement to take unlawful action, "[t]here is no such thing as accidental, inadvertent or negligent participation in a conspiracy." *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994). A conspiracy requires that the defendant "knowingly and voluntarily participates in a common scheme to commit an unlawful act or a lawful act in an unlawful manner," which in turn can create liability for tortious acts in furtherance of the conspiracy. *Id.* at 894–95.

To nonetheless credit Plaintiff's theory would make a nonprofit organization that solicits funds for and makes bail funds available to others liable under a theory of civil conspiracy for allegedly tortious acts committed by independent actors to whom the bail funds were made available. CJE is aware of no case law supporting such an expansive reading of civil conspiracy law. And Illinois law forecloses it: "A defendant who innocently performs an act which happens to fortuitously further the tortious purpose of another," one Illinois court explained, "is not liable under the theory of civil conspiracy." *Id.* (citation omitted). For this reason alone, this Court should affirm dismissal of the conspiracy claims.

### B. Plaintiff's Aiding and Abetting Claims Are Meritless.

The Court should likewise affirm dismissal of the aiding and abetting claims.

To plead an aiding and abetting claim under Illinois law, a plaintiff must allege that: (1) a principal "perform[ed] a wrongful act which cause[d] an injury," (2) the defendant "knowingly and substantially assist[ed] the principal violation," and (3) at the time it provided the assistance, the defendant was "regularly aware of his role as part of the overall or tortious activity." *Bank of Am., N.A. v. Knight*, 875 F. Supp. 2d 837, 849 (N.D. Ill. 2012) (quoting *Grimes v. Saikley,* 904 N.E.2d 183, 196 (Ill. App. Ct. 2009)), *aff'd*, 725 F.3d 815 (7th Cir. 2013). "[I]t is not enough that a defendant assist[ed] or encourage[d] another to engage in a tort; rather, to subject a defendant to liability, the assistance or encouragement must be substantial." *Kohn v. Laidlaw Transit, Inc.*, 808 N.E.2d 564, 575 (Ill. App. Ct. 2004). And where a party likely would have engaged in precisely the same allegedly tortious conduct even without the defendant's involvement, Illinois courts have found that any assistance was not

substantial. In *Umble v. Sandy McKie & Sons, Inc.*, 690 N.E.2d 157 (Ill. App. Ct. 1998), for example, the plaintiff alleged that the defendant substantially assisted a drunk driver by repairing the drunk driver's car, but the court found no substantial assistance because "[the drunk driver] could simply have continued driving" even if the defendant refused to repair his vehicle. *Id*. at 159.

Here, Plaintiff fails to allege that CJE knowingly and substantially assisted any allegedly tortious acts by protesters. Plaintiff's only allegations as to CJE center on the Bail Fund—but Plaintiff does not allege *any* contact between CJE and protesters, or even that any protester participated in the April 15 protest in reliance on the Bail Fund. Even crediting Plaintiff's allegations as true, all CJE purportedly did was help raise bail money for protesters across the country—fully lawful conduct. A non-profit that makes funds available for bail simply cannot be said to have aided and abetted the allegedly wrongful conduct that necessitates the bail. Were the law otherwise, organizations or people who create and advertise bail funds would be subject to limitless liability based on the alleged conduct of individuals with whom they have had no contact, a result Illinois law does not countenance.

The lack of substantial assistance is particularly glaring here given the abolishment of cash bail in Illinois. The Bail Fund could not have incentivized, let alone substantially assisted, a protester in Illinois who did not need cash to post bail. The only plausible inference is that the protesters here, like the drunk driver in *Umble*, would have engaged in precisely the same conduct regardless of whether a nationwide bail fund was available. 690 N.E.2d at 159. While Plaintiff insists the

protesters could be federally prosecuted and required to post cash bail in the federal system (*see* A62), Plaintiff does not identify a federal law that was violated. In any event, under the Bail Reform Act of 1984, 18 U.S.C. §§ 3141 *et seq.*, cash bail is virtually non-existent in the federal system, too.[18]

## C. The Underlying Tort Claims Are Meritless.

Even if Plaintiff could clear these hurdles, conspiracy and aiding and abetting are not independent claims; they require an underlying tort. *Squires-Cannon v. Forest Preserve Dist. of Cook Cnty.*, 897 F.3d 797, 806 (7th Cir. 2018). And where the underlying tort claims fail—as here—so too do the civil conspiracy and aiding and abetting claims. A25–26.

### 1. Plaintiff's false imprisonment theory of liability is legally flawed.

Plaintiff's false imprisonment theory in Count I, on which Plaintiff's conspiracy and aiding and abetting claims in Counts VI and VIII are premised, is legally flawed. As the district court correctly held, blocking highway traffic does not amount to false imprisonment. A9–18, A25–26.

To state a claim for false imprisonment under Illinois law, a complaint must allege that a defendant intentionally caused the unlawful "restraint of an individual's

---

[18] Under the Bail Reform Act, federal courts can set nonfinancial bond conditions to ensure defendants appear at trial and allow defendants to be released on their own recognizance unless the release would not reasonably assure the defendant would appear for future court dates. Any additional restrictions must be the least restrictive necessary to ensure appearance. The effect has been to minimize the role of financial bonds in the federal system. *See* Amaryllis Austin, *The Presumption for Detention Statute's Relationship to Release Rates*, U.S. Courts 52 (Sept. 2017) ("the [Bail Reform Act] restricted the use of financial bonds").

liberty, against his will." *Meerbrey v. Marshall Field & Co.*, 564 N.E.2d 1222, 1231 (Ill. 1990). While physical force is not required, false imprisonment does, at a minimum, require that the victim be "compelled to remain where he does not wish to remain or to go where he does not wish to go." *Morris v. Faulkner,* 361 N.E.2d 112, 114 (Ill. App. Ct. 1977); *id.* (explaining that false imprisonment "only specifically addresses itself to the interest of freedom from confinement"); *see also Trevino v. Flash Cab Co.,* 651 N.E.2d 723, 729 (Ill. App. Ct. 1995) (rejecting false imprisonment claim based on plaintiff being forced to exit a taxicab during a snowstorm because plaintiff "was neither detained nor confined against her will, unless one absurdly considers the plaintiff to have been confined to all the world except the defendants' taxi"). In addition, a defendant must act with the intent to restrain an individual's movement in a way that rises to the level of actionable confinement. *See* Restatement (Third) of Torts § 7(c) (Tentative Draft No. 3, 2018) ("Third Restatement").

Plaintiff argues that he and thousands of other motorists were falsely imprisoned when the protest on I-190 prevented them from proceeding toward O'Hare Airport, leaving them stuck in traffic unless they exited their vehicles on foot. Op. Br. 11–24. Tellingly, Plaintiff cites no precedent—in Illinois or elsewhere—permitting a civil lawsuit *of any kind* seeking damages against an individual for intentionally blocking highway traffic, let alone a claim for false imprisonment. Nevertheless, relying on irrelevant illustrations from the Restatement of Torts and inapposite state court decisions, Plaintiff insists this Court should be the first to hold that intentional conduct creating a traffic jam amounts to false imprisonment.

The district court correctly rejected Plaintiff's novel theory as inconsistent with Illinois law and the relevant Restatements on which Illinois courts frequently rely. *See Randall v. Lemke*, 726 N.E.2d 183, 185 (Ill. App. Ct. 2000) ("In the absence of Illinois authority, we deem persuasive the Restatement (Second) of Torts."); *Morris*, 361 N.E.2d at 114 (relying on Second Restatement § 36 to define false imprisonment). The Second Restatement squarely forecloses liability for false imprisonment on these precise facts:

> *Blocking highway*. In order to make the actor liable for false imprisonment …, it is necessary that he shall have confined another in a particular area, the boundaries of which are fixed by the will of the actor. *It is not enough that the other's freedom of movement has been improperly restricted. Thus, one who blocks off a highway, intending to prevent the public from passing along it, is not liable for false imprisonment to one whose privilege to use the highway has been thus denied.*

> Indeed, the actor does not incur any liability by so doing, since the public is merely privileged to travel the public highways and has not a right to do so; that is, the interest of the members of the public in such travel is not protected by a right of action in them.

Second Restatement § 36 cmt. d (emphasis added).

The Restatement also provides that a defendant is not liable for false imprisonment even if the defendant "intentionally prevent[s] another from going in a particular direction in which he has a right or privilege to go," *id.* § 36(3), or if they enclose a part of the highway "but put[ ] no obstacle in the way of [a plaintiff]'s leaving by the way in which he entered[, it]," *id.* § 36, illus. 11. In these situations, there is no "total" restraint—at most, there is an "obstruction of the right to go where the plaintiff pleases." William Prosser et al., *Prosser and Keeton on Torts* at 47 (5th ed. 1984). Thus, as the district court explained, even if "Plaintiff felt trapped in his car

and in fact could not easily go where he wanted to"—namely, the airport—"it is not enough for a plaintiff to voluntarily remain in a place even if they believe they are justified in doing so."[19] A15; *see also Martin v. Lincoln Park West Corp.*, 219 F.2d 622, 623–24 (7th Cir. 1955) (no false imprisonment under Illinois law where individual was locked out of room containing his belongings but subject to no restraints to his person).

Plaintiff argues that the district court got it wrong because: (1) other parts of the Second and Third Restatements, despite not addressing the specific conduct of blocking a highway, purportedly support false imprisonment liability under analogous circumstances; and (2) Illinois courts supposedly do not follow comment d of the Second Restatement. Plaintiff is wrong.

*First*, the Second and Third Restatement provisions Plaintiff cites do not support Plaintiff's claim. It is true, as Plaintiff notes (Op. Br. 15), that one can be falsely imprisoned within a vehicle—say, as a driver held up at gunpoint by actors surrounding the vehicle or as a passenger prevented from escaping by the driver. *See* Second Restatement § 36 cmt. c & illus. 9. But these examples involve intentional

---

[19] Not only was Plaintiff free to leave his vehicle, he appears to have made a choice to enter the highway *after* it already was blocked by protesters. Plaintiff alleges that the protest lasted for two and a half hours—but that he was stuck in traffic for just "over an hour." SAC ¶¶ 6, 76. The fair inference is that the protest had been going on for at least an hour by the time Plaintiff entered I-190. *See* A12 n.5. A reasonable person under these circumstances could have avoided the so-called "gridlock" altogether by taking an alternative route to the airport—*e.g.*, using a local access road, or by parking his car at the Rosemount CTA station and taking the Blue Line to the airport. Regardless, Plaintiff was "confined to all the world" except driving his car down a portion of I-190 to O'Hare, which does not constitute false imprisonment. *See Trevino*, 651 N.E.2d at 729.

conduct to confine an individual in a particular place, which is materially different from preventing passage on a road. *See* A13. It cannot be that the mere presence of traffic—a reality that existed when the Second Restatement was published in 1965— suffices to transform the otherwise unactionable act of blocking a highway into actionable false imprisonment.[20]

Plaintiff also cites Illustrations 2 through 5 of the Second Restatement § 36 (Op. Br. 17), but those illustrations presume the actor's intent to imprison an individual (an intent absent here), before describing fact patterns that illustrate whether certain means of escape would negate the actor's liability. The Restatement explains that, where a defendant has intentionally confined a victim to a room, the victim "is not required to run any risk of harm to his person or to his chattels or of subjecting himself to any substantial liability to a third person in order to relieve the [defendant] from [] liability." Second Restatement § 36 cmt. a. The Restatement's comment d, by contrast, speaks to the more specific factual scenario applicable here: one in which the actor "blocks off a highway" with the intent "to prevent the public from passing along it." In that specific context, where an individual has no right to use a highway, there is no imprisonment and thus no reason to analyze Plaintiff's means of escape. *See* A14.

---

[20] Relatedly, there is no merit to Plaintiff's reading of comment d as precluding liability only for "the denial of the privilege to enter the highway" (Op. Br. 15), while permitting claims by drivers who are able to enter the highway but experience traffic once there. In either scenario, the blocking of the highway merely prevented passage in a particular direction; that the driver's *car* has less freedom of movement in the latter scenario cannot be dispositive for a false imprisonment claim requiring confinement of a *person*.

Even if this Court were to assess the availability of escape, it should reject Plaintiff's insistence that he had no means to escape. Plaintiff admits that others stuck in traffic left their vehicles and proceeded to the airport on foot. SAC ¶ 75. Plaintiff could have done so too. Plaintiff says that leaving his vehicle would have triggered liability under 625 ILCS 5/4-201, but as the district court explained (A14), the statute defines an abandoned vehicle as one that has remained on the road for "7 days or more," or is in a "hazardous dilapidated" state. 625 ILCS 5/4-201(b). Plaintiff could have returned within hours, when the protest ended, to move his vehicle, which he does not allege was in a hazardous dilapidated state. Plaintiff characterizes the prospective financial liability as duress (Op. Br. 20–22), but a motion to dismiss tests the sufficiency of the complaint, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009), and Plaintiff's assertions of duress are both unsupported by the complaint's allegations and legally unfounded. This type of economic motivation—here, Plaintiff's desire to avoid paying a towing charge—does not amount to duress. *See* Third Restatement § 8 cmt. h (defining duress to generally exclude "economic pressures").

*Second*, Illinois law does not, as Plaintiff contends, deviate from the Restatements to embrace Plaintiff's expansive view of false imprisonment liability. To the contrary, the published decisions Plaintiff cites—*Morris* and *Karow*—are consistent with the Restatements, while the unpublished decision in *Robinson* is non-precedential and unpersuasive. Op. Br. 17–19 (citing *Morris*, 361 N.E.2d 112; *Karow v. Student Inns, Inc.*, 357 N.E.2d 682 (Ill. App. Ct. 1976); *Robinson*, 1985 Ill. App. LEXIS 2179).

Start with *Morris*, where an Illinois appellate court reaffirmed that "an action in false imprisonment only specifically addresses itself to the interest of freedom from confinement" and held that being denied entrance to a specific place (there, a tavern) did not constitute confinement. 361 N.E.2d at 114; *see also* Third Restatement § 8 cmt. b. As Plaintiff observes (Op. Br. 18–19), the *Morris* court noted in dicta that denying access to a particular space might be a restraint on liberty that might be considered "a tortious violation of that right to use [that space]." 361 N.E.2d at 114. But here, Plaintiff does not claim an unfettered right to use the highway, and a restraint on the freedom of locomotion still requires "actual restraint," defined by the *Morris* court as "some act or conduct equivalent to assault, actual or constructive," absent here. *Id*. at 115.

*Karow* also is inapposite. There, the appellate court held that the police's removal of the plaintiff from a building against his will (and without good cause) satisfied the restraint element of false imprisonment. 357 N.E.2d at 685–86. This is because the plaintiff was "impelled to go where he d[id] not wish to go." *Id*. at 686. The Third Restatement supports the availability of a false-imprisonment claim in similar circumstances, such as "when the actor coerces a person to accompany the actor as he or she walks to the back of a store." Third Restatement § 8 cmt. b. But here, Plaintiff himself was not impelled or coerced. His vehicle could not move, but that does not mean *he* could not move. *Trevino*, 651 N.E.2d at 729 (not being allowed to travel in a taxicab is not false imprisonment).

*Robinson* does not change the analysis. As the district court observed (A11–

12), *Robinson* is an unpublished decision without precedential force.[21] But even if one were to entertain *Robinson* as persuasive authority, the opinion fails to persuade. The *Robinson* court reversed a grant of summary judgment to defendants on the ground that a material fact remained as to "the reasonableness of the Robinsons' belief that they were being restrained to their premises" when defendants blocked the sole access road with a chain. 1985 Ill. App. LEXIS 2179, at *8–9. This reasoning makes little sense. There was no dispute that defendants' blocking of the access road did *not* restrain them to their premises, as one plaintiff "admittedly" left the premises on foot while the road was blocked. *Id.* at *8. It is thus no surprise that *Robinson* has not been adopted in a precedential opinion, or even cited in a subsequent opinion, in the intervening four decades.

Beyond these decisions by Illinois courts, federal courts applying Illinois law have also rejected false imprisonment claims premised on restrictions impeding movement of one's belongings, such as one's vehicle, rather than the individual's own movement. For example, in *Marcano*, the court found that "choosing to remain" with one's automobile and belongings, which Plaintiff alleges he did here, did not constitute actionable confinement as there was no physical restriction on the *individual's* freedom to move, as distinct from her freedom to move her automobile. 550 F. Supp. at 603; *accord Gable v. Universal Acceptance Corp. (WI)*, 338 F. Supp.

---

[21] Illinois law has long provided that unpublished orders are "not precedential." Ill. Sup. Ct. R. 23. Accordingly, Plaintiff's analysis of the revisions to this rule over time (Op. Br. 17–18, 18 n.3) is irrelevant for purposes of this appeal: what matters on appeal is that *Robinson* had no precedential force when it was decided, and has no precedential force under any intervening version of the applicable rule.

3d 943, 957 (E.D. Wis. 2018) (parking truck behind plaintiffs' car was not false imprisonment under Wisconsin law because plaintiffs were "free to leave their car").

In short, the district court correctly held that the blocking of a highway was not an unlawful restraint of Plaintiff himself and thus not actionable as false imprisonment.

## 2. Plaintiff's common-law obstruction-of-highway theory of liability is legally flawed.

Plaintiff's conspiracy and aiding and abetting claims (Counts V and VII) based on a "common-law tort for foreseeable injury caused by intentional breach of duty," as alleged in Count II, likewise fail.

Count II of the second amended complaint is labeled "common-law tort for foreseeable injury caused by intentional breach of duty." A70 (cleaned up). Citing 625 ILCS 5/11-1416 of the Illinois Vehicle Code, which prohibits persons from "willfully and unnecessarily hinder[ing], obstruct[ing] or delay[ing], or willfully and unnecessarily attempt[ing] to delay, hinder or obstruct" traffic (SAC ¶ 99), Plaintiff asserts that "Defendants had a legal duty" to anyone "lawfully driving or traveling along or upon any highway" in Illinois, including Plaintiff, to not obstruct the highway or delay traffic, *id*. As the district court explained (A18–25), it is unclear whether this count is meant to operate as a negligence claim, a claim for willful and wanton conduct, or something else. What is clear is that Plaintiff has failed to plead a viable cause of action under Illinois law.

There is no such thing in Illinois as a "common-law tort for foreseeable injury caused by intentional breach of duty." A18. Even construing the claim generously as

one for violation of a public safety statute, the alleged injuries are not of the kind intended to be protected by a public safety statute. A18–21. Nor can the Court imply a private right of action in the Illinois Vehicle Code.[22] A21–23. Finally, Plaintiff does not plead a claim for negligence premised on breach of a common-law duty of care owed to Plaintiff. A23–25. Indeed, to hold otherwise would mean that any irate individual could sue organizers of any major event planned in Chicago where the organizers knew the event would increase traffic.

***Violation of a Public Safety Statute***. If the Court construes Count II as a negligence claim based on violation of a public safety statute, the claim would fail because the alleged injuries are not of the kind intended to be protected by a public safety statute. As the district court noted (A19), in Illinois, "[t]he violation of a public safety statute is *prima facie* evidence of negligence and *creates a cause of action* if it is the proximate cause of the subsequent injury." *Ding v. Kraemer*, 376 N.E.2d 266, 268 (Ill. App. Ct. 1978) (citing *Ney v. Yellow Cab Co.*, 117 N.E.2d 74 (Ill. 1954)). "It is the violation of a public safety statute itself that creates the cause of action." A19. But significantly, under *Kalata v. Anheuser-Busch Cos.*, "[a] party injured by such a violation may recover *only* by showing that the violation proximately caused his injury and the statute or ordinance was intended to protect a class of persons to which he belongs *from the kind of injury that he suffered*." 581 N.E.2d 656, 661 (Ill. 1991) (emphases added).

---

[22] On appeal, Plaintiff appears to have abandoned any argument for an implied private right of action. Accordingly, CJE does not provide further argument on this issue, except to endorse the reasoning of the district court. *See* A21–23.

Here, Plaintiff describes his purported injuries as "[l]oss of personal freedom," unspecified "[l]ost business opportunities," "[a]nnoyance, inconvenience, and physical discomfort; anxiety and emotional distress," and "loss of time." SAC ¶¶ 96, 108. The district court correctly concluded (A20–21) that these are plainly not the types of injuries that the Illinois Vehicle Code was designed to protect against; rather, the statute was "designed to protect human life." *Passarella v. NFI Interactive Logistics, LLC*, No. 12 C 4147, 2015 WL 4148674, at *8 (N.D. Ill. July 9, 2015).

Plaintiff contends that the district court erroneously "blended the 'public safety statute' and 'kind of injury' requirements," rather than confining the "kind of injury" inquiry to an assessment of whether his alleged injuries are consistent with the legislative intent animating 625 ILCS 5/11-1416. Op. Br. 28–29. In his view, the intent of 625 ILCS 5/11-1416 is to promote "the effective movement of traffic," and his alleged injuries are of this kind because they flow from "the lack of effective movement" of traffic caused by the protest. Op. Br. 29 (emphasis and citation omitted). But this argument is nonsensical. If 625 ILCS 5/11-1416 were only about the effective movement of traffic, it would not be a public safety statute for which there could be a cause of action under *Kalata,* as *Kalata* recognizes a cause of action only for a violation of a public safety statute that proximately causes the claimed injury. The district court assumed that 625 ILCS 5/11-1416 is a public safety statute—an assumption favorable to Plaintiff—to reach the question of whether Plaintiff's injuries are of the kind that the statute was intended to protect against. If the statute was in fact *not* intended to protect human life and public safety but rather

to promote the efficient movement of traffic for the convenience of motorists, as Plaintiff insists, there could be no negligence claim premised on its violation under *Kalata*.

**Breach of a Common-Law Duty of Care**. Nor has Plaintiff pleaded a claim for negligence premised on breach of a purported common-law duty of care owed to Plaintiff. As the district court observed, Plaintiff "nowhere pleads a claim for negligence against Defendants premised on a common-law duty of care to Plaintiff or the putative class." A24. Rather, the second amended complaint alleges that Defendants are "liable to Plaintiff for violating a duty arising out of the Illinois Vehicle Code." *Id.* (citing SAC ¶¶ 97–100). That claim fails for the reasons just discussed. *See* A24–25 (citing *Gauchas v. Chicago Transit Auth.*, 206 N.E.2d 752, 756 (Ill. App. Ct. 1965) (distinguishing between claim premised on breach of common-law duty and claim premised on violation of statute meant to protect public safety)).

Even if the second amended complaint did contain allegations about Defendants' purported common-law duty of care to Plaintiff, that claim would fail. Under Illinois law, courts consider four factors when determining whether a defendant owed a common-law duty of care: "(1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant." *Simpkins v. CSX Transp., Inc.*, 965 N.E.2d 1092, 1097 (Ill. 2012). Taken together, these factors foreclose a finding that Defendants owed Plaintiff a duty of care.

To start, Plaintiff's alleged injuries—being inconvenienced by becoming stuck

in traffic—are minor and ubiquitous. Motorists routinely experience traffic. One can guard against the impacts of traffic by budgeting extra time to reach one's destinations or opting for public transit, particularly if pressed for time. CJE is unaware of any precedent permitting a common-law negligence claim where a plaintiff claimed inconvenience from traffic. On the other hand, the consequences of imposing a duty on Defendants would be significant. If drivers were empowered to pursue civil litigation every time another driver committed a traffic violation that caused a traffic jam, courts would have time for little else. Illinois courts have thus declined to find a duty where a defendant's actions caused increased traffic, even when the traffic contributed to an accident—a far more serious outcome than here. *See Shank v. H.C. Fields*, 869 N.E.2d 261, 265–67 (Ill. App. Ct. 2007) (finding no duty where construction company's work caused a lane closure, contributing to a car accident).

Equally importantly, finding a duty here would meaningfully curtail people's freedom to protest. Most protest marches, even those permitted under municipal law, invariably cause some traffic and disruption. *See Vodak v. City of Chi.*, 624 F. Supp. 2d 933, 940 (N.D. Ill. 2009), *rev'd on other grounds by* 639 F.3d 738 (7th Cir. 2011) ("[B]oth permitted and non-permitted marches cause inconvenience and obstruct traffic."). Public forums like streets nonetheless occupy a "special position in terms of First Amendment protection," *United States v. Grace*, 461 U.S. 171, 180 (1983), with the Supreme Court "repeatedly referr[ing] to public streets as the archetype of a traditional public forum," *Snyder v. Phelps*, 562 U.S. 443, 456 (2011) (quotation

omitted). If Plaintiff's claim were allowed to proceed, any motorist inconvenienced by a demonstration could pursue civil litigation, even against demonstrators whose actions were authorized or permitted by the City—turning the law into a weapon to silence protesters and chill the exercise of First Amendment rights.[23]

Plaintiff argues that "Defendants owe a duty to 'exercise due care' to every driver on th[e] road" (Op. Br. 25–26), citing *Palausky v. Landers*, 385 N.E.2d 751, 752 (Ill. App. Ct. 1978). But *Palausky* concluded that a "pedestrian who is outside a crosswalk has the specific duty of yielding the right of way to oncoming traffic, while the motorist has the duty to exercise due care in avoiding the pedestrian." 385 N.E.2d at 752. Neither of those scenarios are relevant here. Because the SAC does not plead a common-law negligence claim, and, in any event, Illinois law does not support finding a common-law duty here, the district court properly rejected Plaintiff's arguments for negligence liability based on breach of a common-law duty of care.

## II. This Court Should Affirm on the Alternative Ground that Plaintiff Lacks Article III Standing.

Even if Plaintiff has stated a valid claim (which he has not), the Court should affirm on the alternative ground that Plaintiff lacks Article III standing. *See Dhakal v. Sessions*, 895 F.3d 532, 536 (7th Cir. 2018) ("We 'may affirm the district court's dismissal on any ground supported by the record, even if different from the grounds relied upon by the district court.'" (quoting *Slaney v. The Int'l*

---

[23] *See United States v. Alvarez*, 567 U.S. 709, 723 (2012) ("The mere potential for the exercise of [censorial] power casts a chill, a chill the First Amendment cannot permit if free speech, thought, and discourse are to remain a foundation of our freedom.").

*Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001))).

To establish Article III standing, a plaintiff must allege that he suffered: (1) a concrete and particularized injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo*, 578 U.S. at 338; *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). Plaintiff cannot meet this standard either as to the alleged past harms or purported future harms.

**Plaintiff Pleads No Concrete Injuries**. Plaintiff's claimed harms in the form of harassment, annoyance, and a general loss of time are not concrete and particularized injuries-in-fact. *See Pennell v. Glob. Tr. Mgmt., LLC*, 990 F.3d 1041, 1044–45 (7th Cir. 2021). Stress and annoyance are not concrete harms. *Id.* at 1045; *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 783 F.3d 607, 616 (7th Cir. 2015) ("purely psychological harm" does not suffice to establish Article III standing). Loss of time can be a concrete injury, as the district court recognized. *See* A29; *see also, e.g., Remijas v. Neiman Marcus Grp., LLC,* 794 F.3d 688, 692 (7th Cir. 2015). But this is true only where allegations as to "the value of one's own time" support finding an economic injury "from an opportunity-cost perspective." *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 828 (7th Cir. 2018); *see also Bachiri v. Medicredit, Inc.,* No. 25-10356, 2025 WL 2803798, at *3 (11th Cir. Oct. 2, 2025) (allegations of lost time spent attempting to "correct an otherwise harmless error" were "insufficient to satisfy Article III" (citation omitted)).

Here, Plaintiff says that being stuck in traffic caused him to miss a dinner and

networking event in another city. SAC ¶ 6. But the particularized injury alleged must be concrete—that is, "'real,' and not 'abstract.'" *Spokeo,* 578 U.S. at 340 (citation omitted). And "articulating a legal theory with clarity is not the same as advancing an allegation of imminent harm with the particularity—the individualization— demanded by Article III." *Access Living of Metro. Chicago v. Uber Techs., Inc.,* 958 F.3d 604, 614 (7th Cir. 2020). Plaintiff gives no details about the event, the networking in which it purportedly would have allowed him to engage, or any tangible benefits of which he purportedly was deprived as a result of missing the event. He pleads no facts about how the supposed loss of this opportunity has manifested, or that he was passed over for employment or business, for which he otherwise would have been qualified, as a result of missing the event. Absent such details, Plaintiff's allegations supply no basis to conclude that time spent in traffic, as opposed to attending this event, constitutes a concrete injury from an opportunity cost perspective.

**Plaintiff Fails to Plausibly Allege Harm Fairly Traceable to CJE**. Even if Plaintiff has pleaded a concrete injury (he has not), any such injury is not fairly traceable to CJE's conduct. Traceability requires that "'the asserted injury was the consequence of the *defendants'* actions,' ...." *Murthy v. Missouri*, 603 U.S. 43, 68 n.8 (2024) (emphasis added) (quoting *Simon v. Eastern Ky. Welfare Rts. Org.*, 426 U.S. 26, 42, 45 (1976)). Here, Plaintiff's only allegations against CJE—that it created the Bail Fund, which he does not say was used by any protester in Chicago—do not establish the "concretely demonstrable" causal connection required by Article III.

*Warth v. Seldin*, 422 U.S. 490, 504 (1975). CJE allegedly helped raise bail money for protesters across the country. But, again, it is undisputed that Illinois abolished cash bail in 2023, long before the protests at issue here. The Bail Fund could not have caused anyone in Illinois to do anything. And, significantly, Plaintiff does not allege that any of the protesters who participated in the protest in Chicago ever had contact with CJE, availed themselves of the Bail Fund, or even intended to avail themselves of the Bail Fund. To find causation under these facts would be to rely on a "purely speculative" chain of inferences, which is impermissible. *Simon*, 426 U.S. at 42–43.

**Plaintiff Has Not Pleaded a Threat of Future Harm**. Plaintiff also lacks standing to seek injunctive relief. "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Freeman v. MAM USA Corp.*, 528 F. Supp. 3d 849, 856–57 (N.D. Ill. 2021) (quoting *Friends of the Earth, Inc.*, 528 U.S. at 185). To establish standing for injunctive relief, a plaintiff "must show that she faces—going *forward*—a 'real and immediate threat of future injury' from [the defendant]'s actions." *Id.* (quoting *Simic v. City of Chi.*, 851 F.3d 734, 738 (7th Cir. 2017)). This requirement is not satisfied where the purported threat of future injury is "merely 'conjectural or hypothetical,'" *Simic v. City of Chi.*, 851 F.3d 734, 738 (7th Cir. 2017) (citation omitted), and where "'the possibility' that the plaintiff 'would suffer any injury as a result of' the challenged practice [is] 'too speculative,'" *Lopez-Aguilar v. Marion Cnty. Sheriff's Dep't*, 924 F.3d 375, 395 (7th Cir. 2019) (quoting *Robinson v. City of Chi.*, 868 F.2d 959, 966 (7th Cir. 1989)).

Plaintiff seeks injunctive relief "prohibiting Defendants from further engaging in the unlawful conduct alleged in th[e] Complaint." SAC at 35. Yet, he cannot credibly establish a real and immediate threat of future injury. In addition to not pleading legally cognizable previous harms, future harm of any kind depends on a speculative chain of events that Plaintiff has not asserted is likely to imminently recur. Plaintiff does not allege that any person or organization has imminent plans to protest again on I-190—or that he plans to again travel on that *same* highway on the *same* day and at the *same* time as the (un)planned protest. *See generally Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013) (rejecting speculative "chain of possibilities"). Even if the second amended complaint did contain such allegations, the likelihood that Plaintiff, an Indiana resident, will be stuck in traffic again on the way to O'Hare Airport on account of a similar protest, with the alleged harm traceable to the actions of the Defendants, is far too speculative to confer jurisdiction. His request for injunctive relief should be dismissed.

## III. This Court Should Affirm on the Alternative Ground that the Court Lacks Personal Jurisdiction Over CJE.

Even if Plaintiff has sufficiently stated a valid claim (which he has not), and has standing (which he does not), the district court lacked personal jurisdiction over CJE, whose fiscal sponsor is a California entity. Nothing in the second amended complaint provides a basis for exercising general or specific personal jurisdiction over CJE.

***General Jurisdiction***. A court has general jurisdiction over a defendant only when a defendant is "essentially at home" in the forum state such that it would be a

proper forum for "*any* litigation arising out of *any* transaction or occurrence ... taking place *anywhere* in the world." *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 787 (7th Cir. 2003); *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citation omitted). For an incorporated entity, barring exceptional circumstances (inapplicable here), general jurisdiction exists only in its place of incorporation and principal place of business, *Daimler*, 571 U.S. at 118; *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358–59 (2021)—the locations where the entity's contacts are so "continuous and systematic" that it is at home in that state, *Purdue Rsch. Found.*, 338 F.3d at 787 (citation omitted); *North v. Ubiquity, Inc.,* 72 F.4th 221, 225 (7th Cir. 2023) (explaining that general jurisdiction requires residing in the state, or incorporation or primary place of business in that state).

As Plaintiff correctly pleads, Tides Center, which is the fiscal sponsor for CJE, is a California-based 501(c)(3) corporation with both its place of incorporation and principal place of business in California. SAC ¶ 17. There is no question that Tides Center is not incorporated in Illinois; nor is Illinois its primary place of business. Plaintiff has not alleged that Tides Center or CJE even operate in Illinois. Therefore, Illinois courts do not have general jurisdiction over CJE.

***Specific Jurisdiction***. Nor are CJE's alleged contacts with Illinois sufficient to establish specific jurisdiction. Specific jurisdiction requires: (1) a defendant to "purposefully direct[ ] his activities at the forum state or purposefully avail[ ] himself of the privilege of conducting business in that state," and (2) that "the alleged injury ar[o]se[ ] out of the defendant's forum-related activities." *N. Grain Mktg., LLC v.*

*Greving*, 743 F.3d 487, 492 (7th Cir. 2014) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Plaintiff can establish neither.

Plaintiff alleges no activity demonstrating that CJE or Tides Center purposefully availed themselves of the privilege of conducting activities in Illinois or intentionally directed conduct toward Illinois. Plaintiff claims the formation of a *nationwide* bail fund advertised on a website promoting a *global* protest but does not allege any CJE activity in or targeting Illinois. He does not claim, for example, that CJE conducted business or other activities in Illinois, or that CJE had a "meeting of the minds" with any alleged co-conspirator in Illinois, related to the A15 Action protests or otherwise. *Cf. Ahmed v. Quinn*, 124 F.3d 203, 1997 WL 471335, at *3 (7th Cir. 1997) (unpublished table decision) ("[C]onclusory allegations of conspiracy unsupported by any factual assertions" that would "suggest[] a meeting of the minds" are "insufficient to confer personal jurisdiction." (cleaned up)). Nor would it make sense for CJE to have targeted Illinois, as Illinois no longer has a cash bail system.

It is not enough that the protests occurred in Illinois, as "the relation between the defendant and the forum 'must arise out of contacts that the "defendant *himself*" creates with the forum.'" *Adv. Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014) (quoting *Walden v. Fiore*, 571 U.S. 277, 284–85 (2014)); *see also Purdue Rsch. Found.*, 338 F.3d at 780 ("the unilateral activity of the plaintiff or some other entity" is not sufficient to confer specific jurisdiction).[24]

_____

[24] For similar reasons, exercising specific jurisdiction here would not "comport with traditional notions of fair play and substantial justice." *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010) (citing *Int'l Shoe Co. v. Wash. Off. of Unemployment*,

Even if Illinois-based protesters sought out CJE's services (which Plaintiff does not allege), at most that would show an effect on the forum—but not that CJE "sought out nor conducted business in Illinois." *Brook v. McCormley*, 873 F.3d 549, 553 (7th Cir. 2017); *see also Ubiquity, Inc.,* 72 F.4th at 226 (even contracting with an Illinois firm, "by itself, does not establish specific personal jurisdiction"). And without allegations of any forum-related activities by CJE or an Illinois-based meeting of the minds between CJE and alleged co-conspirators, Plaintiff has failed to tie his alleged injuries to *any* conduct CJE participated in, much less CJE's forum-specific conduct.

## IV. In the Event of Remand, the Court Should Not Direct that the Case be Reassigned Under Circuit Rule 36.

Should this Court remand for further proceedings (and it should not), it should decline to reassign the case pursuant to Circuit Rule 36, as Plaintiff requests. Op. Br. 34–38.

Where "a case tried in a district court is remanded… for a new trial," it is presumptively "reassigned" to a new judge. 7th Cir. R. 36. The same is not true of remands in other procedural postures, in which contexts "[i]t has long been regarded as normal and proper for a judge to sit in the same case upon its remand." *Liteky v. United States*, 510 U.S. 540, 551 (1994). As this Court has explained, "further proceedings are routinely heard by the district judge who entered the order that was the subject of the appeal," *In re United States,* 572 F.3d 301, 305 n.3 (7th Cir. 2009), even where that judge dismissed the complaint with prejudice, as here. "Judicial

326 U.S. 310, 316 (1945)). And while Illinois has a "strong interest in providing a forum for its residents … to seek redress," Plaintiff is a resident of Indiana. *Id.* at 709.

rulings," this Court has explained, "rarely present a valid basis to question a judge's impartiality," *Dupree v. Laster*, 389 F. App'x 532, 535 (7th Cir. 2010) (citing *Liteky*, 510 U.S. at 555) (rejecting an argument for reassignment based on "the judge's prior dismissal of the complaint").

Notwithstanding the case law's clear directive, Plaintiff asks that this Court take the extraordinary step of ordering reassignment because the district court ruled against him at the motion to dismiss stage and imposed Rule 11 sanctions. Op. Br. 34–38. The Court should decline. The district court's opinion reflects no bias. As indicated by the analysis above, the dismissal was well reasoned and legally sound. The court accepted some of Defendants' arguments, while disagreeing with others, such as lack of standing. A9–27.

The district court's imposition of sanctions, too, was not the product of bias but of a careful review of the complaint's allegations and Plaintiff's other filings, which the court reasonably found reflected an improper purpose. And even where this Court has reversed an award of sanctions, it nonetheless has remanded without reassignment. *E.g.*, *Triad Assocs., Inc. v. Chi. Hous. Auth.*, 892 F.2d 583, 596 (7th Cir. 1989), *abrogated on other grounds by Bd. of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668 (1996); *Samuels v. Wilder*, 906 F.2d 272, 275–76 (7th Cir. 1990). It should do the same here.

## CONCLUSION

For the foregoing reasons, this Court should affirm the dismissal of Plaintiff's second amended complaint with prejudice.

Respectfully submitted,

Dated: December 23, 2025

TIDES CENTER

By  /s/ Andrianna D. Kastanek
      One of Its Attorneys

Andrianna D. Kastanek
Precious S. Jacobs-Perry
Ali I. Alsarraf
JENNER & BLOCK LLP
373 North Clark Street
Chicago, IL 60654
(312) 222-9350
akastanek@jenner.com

*Attorneys for Defendant-Appellee*
*Tides Center*

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)

     1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32(c) and this Court's Order of October 22, 2025 (Dkt. 37), because, according to the word count function of Microsoft Office Word 365, this brief contains 12,979 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

     2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Circuit Rule 32 and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 365 in 12 point Century Schoolbook for the main text and footnotes.

Dated:  December 23, 2025

                             /s/ Andrianna D. Kastanek
                             Andrianna D. Kastanek

## CERTIFICATE OF SERVICE

I, Andrianna D. Kastanek, an attorney, hereby certify that on December 23, 2025, I caused the **Response Brief Of Defendant-Appellee Tides Center** to be electronically filed with the Clerk of the Court for the United States Court Of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Pursuant to ECF procedure (h)(2) and Circuit Rule 31(b), and upon notice of this Court's acceptance of the electronic brief for filing, I certify that I will cause 10 copies of the above named brief to be transmitted to the Court via UPS overnight delivery, delivery charge prepaid, within five days of that date.

Dated: December 23, 2025

 /s/ Andrianna D. Kastanek
Andrianna D. Kastanek