No. 25-2382

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

CHRISTOPHER MANHART, individually and
on behalf of all others similarly situated,
*Plaintiff-Appellant,*

v.

WESPAC FOUNDATION, INC., *et al.*,
*Defendants-Appellees.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, No. 1:24-cv-8209 (Rowland, J.)

## BRIEF OF DEFENDANT-APPELLEE WESPAC FOUNDATION, INC.
## IN OPPOSITION

Robert L. Herbst
Herbst Law PLLC
420 Lexington Avenue, Suite 300
New York, New York 10170
914-450-8163
rherbst@herbstlawny.com


*Attorney for Defendant-Appellee WESPAC Foundation, Inc.*

Appellate Court No. 25-2382

Short Caption:     Manhart v. WESPAC Foundation, Inc., *et al.*

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

   **[x]**   **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

  WESPAC Foundation, Inc.

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the District Court or before an administrative agency) or are expected to appear for the party in this court:

  Herbst Law PLLC (new)

(3)   If the party or amicus is a corporation:

  i)    Identify all of its parent corporations, if any; and
    None (new)

  ii)    list any publicly held company that owns 10% or more of the party's or amicus' stock:
    None (new)

(4)   Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:   N/A

(5)   Provide Debtor information required by FRAP 26.1 (c) 1 & 2:   N/A

---

Attorney's Signature   s/ Robert L. Herbst      Date:   December 23, 2025 (new)

Attorney's Printed Name:  Robert L. Herbst

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes**    X

                              **No**

Address:    Herbst Law PLLC
      420 Lexington Avenue, Suite 300, New York, NY 10170

Phone Number:  (914) 450-8163       Fax Number:

E-Mail Address:  rherbst@herbstlawny.com

rev. 12/19 AK

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION ....................................................................................................1

JURISDICTIONAL STATEMENT ...........................................................................1

STATEMENT OF THE ISSUES................................................................................2

SUMMARY OF THE ARGUMENT .........................................................................3

ARGUMENT............................................................................................................5

    I. Plaintiff Failed to Plead Derivative Liability Claims .......................................5

    II. The District Court Correctly Found The "Alternative" Negligence Claim Failed .........8

        A. Plaintiff Cannot Establish That WESPAC Owed Him a Duty ..........................9

        B. Plaintiff Has Not Pled Breach ........................................................................12

    III. The District Court's Decision May Be Affirmed for Lack of Personal Jurisdiction Over WESPAC ................................................................................13

CONCLUSION.......................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009). ................................................................ 5, 13

*Bank of Am., N.A. v. Knight*, 875 F. Supp. 2d 837 (N.D. Ill. 2012) ............................ 5

*Bankers Tr. Co. v. Mallis*, 435 U.S. 381 (1978) ........................................................ 2

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................... 5, 13

*Bradley v. Village of University Park, Illinois,* 59 F.4th 887 (7th Cir. 2023) ............... 11

*Bristol-Myers Squibb Co. v. Superior Court of Calif.*, 582 U.S. 255 (2017) ................. 15

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ....................................... 15, 16

*Calumet River Fleeting, Inc. v. Int'l Union of Operating Eng'rs, Loc. 150*, 824 F.3d 645
  (7th Cir. 2016) ....................................................................................................... 2

*Felland v. Clifton*, 682 F.3d 665 (7th Cir. 2012) ...................................................... 15

*Helmann v. Codepink Women for Peace*, 2025 WL 3030582
  (C.D. Cal. June 13, 2025) ................................................................. 7, 8, 11, 14

*Indus. Packaging Supplies, Inc. v. Channell*, 2018 WL 2560993 (N.D. Ill. June 4, 2018) ...... 8, 13

*McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242 (Ill. 1999) ..................... 5

*Nayak v. Farley*, 763 F. App'x 570 (7th Cir. 2019) ................................................... 2

*New York ex rel. TZAC, Inc. v. New Israel Fund*, 520 F. Supp. 3d 362 (S.D.N.Y. 2021) ........... 11

*Peretz v. Sims*, 662 F.3d 478 (7th Cir. 2011) .......................................................... 13

*Prominence Advisors, Inc. v. Dalton*, 2017 WL 6988661 (N.D. Ill. Dec. 18, 2017) ............... 8, 13

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773 (7th Cir. 2003). ................... 14

*Simpkins v. CSX Transp., Inc.*, 965 N.E.2d 1092 (Ill. 2012) ............................... 9, 11, 12

*Tamburo v. Dworkin*, 601 F.3d 693 (7th Cir. 2010) ................................................. 15

*Walden v. Fiore*, 571 U.S. 277 (2014) ..................................................................... 15

**Statutes**

28 U.S.C. § 1291 ................................................................................................... 2

28 U.S.C. § 1332 ................................................................................................... 1

## INTRODUCTION

Defendant-Appellee WESPAC Foundation, Inc. ("WESPAC") is a small Westchester County, New York non-profit corporation dedicated to peace and justice. One of its missions is to support the struggle for justice and equal rights for all the inhabitants of Israel/Palestine.

Plaintiff alleges that while driving to O'Hare airport on April 15, 2024, he was stuck in morning traffic worse than usual, due to a protest allegedly involving student groups like National Students for Justice in Palestine ("NSJP") and others who were purportedly implementing the "A15 Action." A-60 ¶¶ 52, 59.[1] However, Plaintiff does not allege WESPAC did *anything* in relation to the protest or any of the events supposedly underpinning his claims. Rather, he sues WESPAC solely because it was NSJP's fiscal sponsor, although Plaintiff does not allege that the protesters actually received any funds from donors whose contributions designated for NSJP were transmitted to WESPAC. This theory has no legal basis and was rejected by the only court to address it directly. Plaintiff also alleges nothing to justify exercising personal jurisdiction over WESPAC here.

## JURISDICTIONAL STATEMENT

Plaintiff's jurisdictional statement is not complete and correct.

On September 9, 2024, Plaintiff filed a putative class action complaint, invoking jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2). R. 1. Plaintiff filed the operative second amended complaint on January 29, 2025. A45–81 ("SAC"). As required by CAFA, the proposed class consists of at least 100 members; there is diversity between at least one of the Defendants and at least one class member; and the aggregate amount in

---

[1] WESPAC cites the electronic record on appeal as "R." followed by document and page number. It cites Plaintiff's opening brief as "Plaintiff Br." and the appendix attached to Plaintiff's opening brief as "A-." It cites the docket in this Court as "Dkt."

controversy exceeds $5,000,000, exclusive of interest and costs. A-48, A-66. As explained below, however, the district court lacked jurisdiction because Plaintiff did not sufficiently plead Article III standing. The district court also lacked personal jurisdiction over CJE.

On August 7, 2025, the district court issued a minute entry (R. 108) and memorandum opinion and order (R. 109) dismissing all claims in Plaintiff's second amended complaint with prejudice.[2] On August 8, 2025, Plaintiff timely filed a notice of appeal. R. 110. As stated in Defendants' response to this Court's August 12, 2025 order directing the parties to file a statement advising the court whether they would request in the district court that judgment be set out in a separate document, pursuant to Federal Rule of Civil Procedure 58(a) (Dkt. 4), the parties agreed that the district court's dismissal of Plaintiff's claims with prejudice was final and appealable notwithstanding the arguable lack of a separate judgment.[3] Dkt. 13 at 2–3; Dkt. 8. This Court therefore has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

Whether the district court properly dismissed the SAC for failure to state a claim against WESPAC, where Plaintiff has failed to allege (a) valid tort claims; (b) valid derivative liability claims; and (c) valid "alternative" negligence or recklessness claims.

---

[2] The district court also awarded sanctions, but its sanctions ruling is not yet final and appealable until the amount of sanctions is determined. *Cf. Nayak v. Farley*, 763 F. App'x 570, 572 (7th Cir. 2019) (Rule 11 sanctions become appealable when an order "clearly specifies (1) who is to pay the sanction, (2) who is to receive it, and (3) the amount"). The issue of sanctions therefore remains with the district court while this appeal proceeds in this Court.

[3] As explained in Defendants' August 19, 2025 filing, *see* Dkt. 13, while the district court's minute order (R. 108) arguably does not constitute a separate judgment satisfying Federal Rule of Civil Procedure 58(a), any noncompliance with Rule 58(a) is not a jurisdictional defect where other sources reflect that the district court's decision is final, as they do here. *See Bankers Tr. Co. v. Mallis*, 435 U.S. 381, 384-85, 385 n.6 (1978); *Calumet River Fleeting, Inc. v. Int'l Union of Operating Eng'rs, Loc. 150*, 824 F.3d 645, 650 (7th Cir. 2016).

Whether this Court should affirm on the alternative ground that personal jurisdiction over WESPAC was lacking, where it is not alleged to have engaged in any forum-related conduct.[4]

## SUMMARY OF THE ARGUMENT

For the reasons contained in the Tides Brief, the district court correctly held that (i) there were no valid tort claims (alleged in Claims I and II) for which NSJP could be held liable; and (ii) accordingly, neither NSJP nor WESPAC can be held liable for the in-concert, aiding and abetting or conspiracy claims (alleged in Claims III-VIII), all of which require some underlying tortious conduct.

Plaintiff's "alternative" claim against WESPAC (Claim IX) is based solely on the allegation that WESPAC was NSJP's fiscal sponsor and as such had a "legal duty to control and supervise the activities of NSJP." A-78, ¶ 146. The district court correctly held that because NSJP is not liable for any tortious conduct, WESPAC cannot be held liable for anything WESPAC did as fiscal sponsor even if, *arguendo*, WESPAC had a legal duty to control and supervise NSJP's activities.

But as the district court went on to hold, there is no legal basis – no case or other authority anywhere – imposing on a fiscal sponsor any such duty to a third-party tort plaintiff.

The district court's ruling was eminently correct, especially here, where Plaintiff does not even *allege* WESPAC knew about the O'Hare protest in advance, helped organize it, promoted it, attended it, provided funds for it[5] or *did anything* relating to it. Since Plaintiff does not allege that WESPAC provided any funds for this protest, WESPAC could not have caused any injury to

---

[4] WESPAC adopts the first and third issues in the Tides Brief's Issues Statement, relating to Plaintiff's failure to plead cognizable tort claims, derivative liability, and standing. WESPAC also adopts the Tides Brief's Statement of the Case, Summary of Argument and Argument that have application to WESPAC.

[5] In fact, NSJP cogently pointed out below that "Plaintiff does not and cannot allege that NSJP contributed a dime to the April 15, 2024, protest." R. 80, at 9.

Plaintiff through its general fiscal sponsorship of NSJP, no matter what the actual form of their fiscal sponsorship was. Plaintiff cites pages from a short guide on fiscal sponsorships to suggest that it was the "direct" type that would create vicarious liability, but Plaintiff fails to plead the specific facts that the guide says would make this fiscal sponsorship a "direct one." (It was not.) Not only do those pages cite no legal authority, but they say nothing suggesting that a non-profit situated as WESPAC is here would be liable in tort to a third-party situated as Plaintiff is here.

Plaintiff does not dispute that WESPAC had no prior knowledge of the protest and no awareness of or relationship with Plaintiff. Instead, he relies solely on a nonexistent fiscal sponsor's "duty under federal law" requiring all fiscal sponsors to control and supervise the "activities" of their sponsored organizations, based solely on a 1968 Revenue Ruling that clearly did not and could not create such duty.

Plaintiff's attempt to source this "duty" in Illinois tort law also fails. Because WESPAC had no awareness of this protest or Plaintiff, it could not have foreseen any injury to him. Nor can he meet any of the other three prongs of the test for imposition of a general duty of care in Illinois. Plaintiff's contention that WESPAC was negligent for not taking some unspecified action that supposedly could have kept him from being in traffic due to a protest about which WESPAC had no advance notice is, frankly, ludicrous.

Finally, WESPAC moved to dismiss for lack of personal jurisdiction but the district court found it unnecessary to rule on that fully briefed issue. Affirming the district court's dismissal on this ground is warranted as Plaintiff does not claim WESPAC did anything in or directed toward Illinois.

**ARGUMENT**

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead "enough facts to state a claim to relief [] plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**I.      Plaintiff Failed to Plead Derivative Liability Claims**

As the district court found, Plaintiff failed to state a claim for any underlying tort and thus could state no claim for derivative liability as a threshold matter. A25-26. Similarly, because the district court correctly found that NSJP had no direct or derivative liability (alleged in Claims III-VIII), WESPAC cannot have any derivative liability based on NSJP's putative liability. A-26. WESPAC adopts Tides' Brief's discussion of the invalidity of the underlying claims and the requisite elements of the derivative-liability claims.

Specific to WESPAC, Plaintiff contends it is liable for conspiracy and aiding and abetting for the sole reason that it was NSJP's sponsor. A-74 ¶ 121, A-75 ¶ 128, A-76 ¶ 135, A-77 ¶ 142. This is a legally bankrupt theory to begin with as detailed below, but a brief examination of the requisite elements underscores the frivolity of Plaintiff's position. Conspiracy requires an agreement to commit a tort. *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999). It is axiomatic that a party (like WESPAC), not alleged even to have known in advance a tort would be committed, cannot have reached a conspiratorial agreement to commit said tort. As to aiding and abetting, a pleading must allege a wrongful act that the defendant "knowingly and substantially assist[ed]," being aware of its "role as part of the overall or tortious activity." *Bank of Am., N.A. v. Knight*, 875 F. Supp. 2d 837, 849 (N.D. Ill. 2012). Again, Plaintiff does not allege

WESPAC knew of any wrongful acts, let alone that it provided any assistance (substantial or otherwise) to those protesting around O'Hare.

With respect to in-concert liability, Plaintiff tries to have his cake and eat it too. He asserts WESPAC is strictly liable due to being a fiscal sponsor and liable *also* because (i) it knew or should have known about "NSJP's blockade strategy," and NSJP "breached its duty to this class via the O'Hare blockade, which was substantially assisted by WESPAC" or (ii) "because it gives substantial fiscal assistance to NSJP which help fund its tortious blockade operations, and that funding breached WESPAC's duty to 'retain control and discretion over the use of funds by' NSJP so to not injure the class." A-71 ¶¶ 105-106, A 72-73 ¶¶ 113-114. The meaning of these words is not entirely clear. However, Plaintiff plainly failed to allege any facts substantiating these vague assertions, particularly failing to allege that WESPAC gave NSJP *anything* in relation to this protest.

Beyond failing to allege underlying torts or derivative-liability claims, Plaintiff's theory of *per se* fiscal-sponsor liability fails entirely. Plaintiff claims that, because NSJP "has no independent corporate structure, it is known as a 'direct fiscal sponsorship'...." App Br. at 5. And "[a]s the beneficiary of a *direct* fiscal sponsor (as opposed to a [sic] being an entity with independent corporate structure from the fiscal sponsor), NSJP's assets were WESPAC's assets, and NSJP's liabilities were WESPAC's liabilities." *Id*. at 31 (emphasis in original). For putative legal authority in support of these propositions, Plaintiff does not cite a single case from a single court nor any law or regulation. Rather, he relies entirely on Gregory T. Colvin and Stephanie L. Petit, Fiscal Sponsorship, 6 Ways to Do It Right (3d ed. 2019) ("Colvin"). *See id.* at 5, 31.

Colvin is essentially a pamphlet that we had to order online because it appears not to be available through standard legal research platforms. The sections of Colvin cited by Plaintiff

relating to "direct" sponsorships do not cite any legal authorities for the assertions made therein. *See* Colvin at 14, 16-19. Moreover, those sections do not even discuss the potential liability of a fiscal sponsor to a third party like Plaintiff. *See id.*[6]

In fact, other than this action, the only legal authority of which WESPAC is aware that addresses Plaintiff's theory is a decision in the Central District of California rejecting it for having no legal basis. In *Helmann v. Codepink Women for Peace*, 2025 WL 3030582 (C.D. Cal. June 13, 2025), the plaintiff sued WESPAC in connection with an alleged protest in Los Angeles, contending that WESPAC was liable for a sponsoree's alleged acts. In granting WESPAC's motion to dismiss, Judge Wilson observed: "Plaintiffs cite *no legal authority* holding that fiscal sponsorship alone creates [] liability, and the Court finds none." *Id.* at *20 (emphasis added). Plaintiff ignores *Helmann*.

We note Plaintiff's lament that the district court did not directly address his strict-liability theory. Plaintiff Br. at 32. However, while the district court's discussion of the claims against WESPAC appears under a heading referring to "Negligence or Recklessness," the discussion is framed in broader terms: "Plaintiff cites no case or legal authority from any jurisdiction suggesting or even contemplating that *any* IRS rule could *ever* create a legal duty sufficient to substantiate *a tort claim*." A-26-27 (last emphasis added).

Even if Colvin were something more than a pamphlet, Plaintiff has failed to plead that NSJP is a "Direct Project" of WESPAC, as described in Colvin. *See* Colvin at 19. According to Colvin, a "Direct Project" is one in which (i) those carrying out the project become employees of

---

[6] Plaintiff also cites IRS PLR 201740022 (Oct. 6, 2017), to contend that "[a]cting as a conduit without [control and discretion over the funds] is illegal, and can cost a non-profit its tax-exempt status." Plaintiff Br. at 5. PLRs are not precedent or legal authority. Obviously, this case does not involve an IRS effort to revoke anyone's tax-exempt status, and IRS PLR 201740022 involved a sponsor that could not account for funds spent on one project and that also transferred funds to a suspected terrorist organization. Thus, PLR 201740022 is utterly inapposite.

the sponsor; (ii) the sponsor pays all expenses directly to vendors for the project; (iii) the project's bank account belongs to the sponsor; and (iv) the sponsor's insurance policies and its policies apply to the project staff. *See* Colvin at 20. Plaintiff has made no attempt to plead that the relationship between WESPAC and NSJP involved those elements.

Moreover, the factual allegations Plaintiff does cite in this context are unavailing. *See* Plaintiff Br. at 31 (citing A49-50, A57-60, pages of the SAC). Plaintiff refers to an allegation, made "upon information and belief," that "WESPAC's fiscal-sponsorship arrangement with NSJP provided NSJP with access to WESPAC's administrative services, staff, and facilities, at least some of which were used to plan and/or carry out NSJP's activities as alleged herein." A-59 ¶ 49.

An allegation made "upon information and belief" need not be accepted as true. *See Indus. Packaging Supplies, Inc. v. Channell*, 2018 WL 2560993, at *2 (N.D. Ill. June 4, 2018) (no "reasonable grounds" that supported conclusory allegations made "upon information and belief"); *Prominence Advisors, Inc. v. Dalton*, 2017 WL 6988661, at *5 (N.D. Ill. Dec. 18, 2017) (same). That is particularly true here, given that Plaintiff did not offer any substantiation regarding the WESPAC "services, staff, and facilities" that were supposedly used by NSJP.[7]

## II. The District Court Correctly Found the "Alternative" Negligence Claim Failed

Plaintiff states that "because WESPAC took the extraordinary position that it had no liability for NSJP's actions" – a "extraordinary position" also taken by Judge Wilson – he "pled in the alternative a second theory of liability: negligent supervision of NSJP." Plaintiff Br. at 32. Even

---

[7] Plaintiff's "direct" or "integrated entity" fiscal-sponsorship allegation also flies in the face of WESPAC's certification in *Helmann* that it has never had an "alter-ego" or "integrated-entity" fiscal sponsorship with any other entity. *See* R. 60, ¶ 6, and R. 79, at 11 n.3.

if Plaintiff had pled a cognizable claim against NSJP (he did not for reasons set forth in Tides' and NSJP's briefs), this theory would fail because it lacks legal basis. Or, as the district court explained:

> It is not clear from where WESPAC's legal duty arises. Plaintiff alleges in his complaint that it stems from a 1968 revenue ruling from the IRS, which allows a 501(c)(3) entity to fund non-exempt activities if they further the entity's exempted purposes if the sponsor retains "control and discretion" over the funds. [69] ¶ 13; [91] at 41 (citing Rev. Rul. 68-489, 1968-2 C.B. 210). But Plaintiff cites no case or legal authority from any jurisdiction suggesting or even contemplating that *any* IRS rule could *ever* create a legal duty sufficient to substantiate a tort claim.

A26-27 (emphasis in original).

Plaintiff laments that the district court ignored Illinois law in this context (while ignoring his own failure to offer any legitimate authority for his "novel" negligence claim), citing *Simpkins v. CSX Transp., Inc.*, 965 N.E.2d 1092 (Ill. 2012), a case the district court did analyze. *See* Plaintiff Br. at 32; A24-25. But neither *Simpkins* nor Illinois law generally is of help to him.

### A.    Plaintiff Cannot Establish that WESPAC Owed Him a Duty

As *Simpkins* explains, Plaintiff must adequately allege that WESPAC owed him a duty under a four-part test: "(1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant." 965 N.E.2d at 1098. Applying these elements clearly militates against finding any duty.

On the first element, the *Simpkins* court agreed with the defendant that "plaintiff's complaint [was] insufficient because it relie[d] on the 'conclusory allegation' that defendant 'knew or should have known' of the dangers of secondhand asbestos exposure." *Id.* at 1099. Here, Plaintiff does not allege WESPAC knew of the relevant protest.

Rather, he asserts that "it was reasonably foreseeable that NSJP would commit torts against motorists." Plaintiff Br. at 33 (citing A58-A61 ¶¶ 45, 47-48, 54-57). A review of the allegations Plaintiff cites (and related allegations) demonstrates the absurdity of Plaintiff's position.

Specifically, he claims the Iranian Revolutionary Guard Corps "issued an internal memorandum…that called for 'an economic blockade across four continents in solidarity with Palestinians' to take place on April 15, 2024," referred to as the "'A15 Action.'" A-60 ¶ 52. Then this "internal" memorandum "was disseminated" to Hamas. *Id.* ¶ 55. While Plaintiff does not explain how the memorandum came to be provided to NSJP, he claims NSJP "implemented that strategy of disruption," which included blocking "'the arteries of capitalism.'" *Id.* ¶¶ 54-55.

Even if it were facially plausible that a sanctioned, elite military outfit in Iran provided instructions to another sanctioned entity, Hamas, so that those instructions could be given to U.S. students to create a traffic jam, none of that would make anything NSJP allegedly did "reasonably foreseeable" to WESPAC. After all, Plaintiff does not allege that WESPAC knew about NSJP's supposed communications with foreign terrorist organizations.

Similarly, the allegations Plaintiff cites regarding the creation of the "A15action" website do not suggest that the traffic blockage in Chicago was "reasonably foreseeable" to WESPAC. Plaintiff's allegations do not even suggest NSJP was involved in the website's development or ever mentioned on it, let alone in connection with a plan to disrupt traffic around O'Hare. A-60-61 ¶¶ 56-57. And Plaintiff never explains how his allegations about prior protests allegedly involving NSJP make it "reasonably foreseeable" that he would be stuck in traffic on April 15, 2024, while driving to the airport, due to NSJP's alleged conduct. *See* A-58-59 ¶¶ 45, 47-48.

In sum, if it was insufficient for the *Simpkins* plaintiff to rely on a "'conclusory allegation' that defendant 'knew or should have known' of the dangers of secondhand asbestos exposure," it is entirely unavailing for Plaintiff to argue it was "reasonably foreseeable" to WESPAC that motorists would be delayed by a protest on the day in question while driving to O'Hare – pursuant

to a conspiracy hatched by the Iranian military and communicated to American college kids by Hamas.

Plaintiff also has no good argument that a nonprofit fiscal sponsor – no matter how small and underfunded it may be – would have a manageable burden if it were required to guard against potentially harmful conduct by a sponsoree around the world, even absent notice that any wrongful conduct would occur at a particular time and place. Indeed, even attempting to fulfil such duty would be beyond unsustainable. *See Simpkins*, 965 N.E.2d at 1098 (analyzing magnitude of burden of guarding against the injury, and consequences of placing burden on the defendant).

Plaintiff makes what appears to be a separate argument that WESPAC had a duty to control NSJP because of its "special relationship" with NSJP. Plaintiff Br. at 32-33. Plaintiff did not make this argument in the district court and therefore waived it. *See, e.g., Bradley v. Village of University Park, Illinois,* 59 F.4th 887, 897 (7th Cir. 2023) (A party may "waive arguments by not raising them in a timely way in the district court").

Moreover, Plaintiff again is taking a position on the supposed responsibilities of fiscal sponsors without any legal authority. The one case Plaintiff cites – *New York ex rel. TZAC, Inc. v. New Israel Fund*, 520 F. Supp. 3d 362 (S.D.N.Y. 2021) – certainly does not stand for the proposition about a special relationship that Plaintiff advances. In fact, Judge Wilson in *Helmann* found this very case "actually undercut[]" the argument that a fiscal sponsor is strictly liable for a sponsoree's actions because "[t]he court did not hold the nonprofit liable for grantees' actions themselves." 2025 WL 3030582, at *20. Further, Plaintiff has failed to allege adequately – or address at all – how the relationship between WESPAC and NSJP was akin to those of "parent-child, master-servant, or employer-employee." *See* Plaintiff Br. at 32-33.

Finally, the outlandish results that would obtain if Plaintiff's theory of duty were credited are uncabined. Any driver who steered a car into traffic having some reason to know her vehicle might have a mechanical issue – overheating or an old fuel filter, for example – would owe a duty to and face liability from anyone who was delayed if the vehicle stopped running.

## B.     Plaintiff Has Not Pled Breach

Even if Plaintiff could establish that WESPAC, a New York entity not alleged to have done anything in relation to the protest, owed a duty to prevent him from being stuck in traffic in Chicago, the "alternative" negligence claim would fail because Plaintiff has not adequately pled breach, nor could he. *See Simpkins*, 965 N.E.2d at 1096 (negligence claims requires beach). The SAC alleges in conclusory fashion that "WESPAC negligently or recklessly breached its duty to control and supervise the activities of NSJP," but provides no substantiating allegation as to how WESPAC supposedly failed in that regard. A-78 ¶ 146.

A review of the SAC reveals that there was no cognizable breach even under Plaintiff's interpretation of events. Again, Plaintiff does not contend that anyone on behalf of WESPAC actually helped plan the protest, attended it, promoted it, or took any other action in connection with it, including funding it – the one activity in which a fiscal sponsor might be expected to engage. On the latter point, Plaintiff states that "[u]pon information and belief, *NSJP used funds*, subscriptions, services, or other institutional support from WESPAC in order to organize and execute…the blockage at O'Hare Airport." A-60 ¶ 50 (emphasis added).

Plaintiff makes no attempt to explain what he means by "subscriptions, services, or other institutional support" or to plead how such items were used for the relevant protest. He also makes no attempt to substantiate the bald assertion that "[u]pon information and belief, *NSJP used funds*" from WESPAC in connection with the protest. Such "conclusory statements, do not suffice" to

state a claim (*Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 555)), especially statements offered "upon information and belief" – and in a third complaint no less. *See Indus. Packaging Supplies*, 2018 WL 2560993, at *2; *Prominence Advisors*, 2017 WL 6988661, at *5. Even assuming *arguendo* the truth of Plaintiff's delicately calibrated allegation that "*NSJP used funds*" from WESPAC (which we understand to be false), that would not constitute a knowing and intended act or omission by WESPAC.

Thus, Plaintiff has not alleged any act or omission by WESPAC that could constitute a "negligent[] or reckless[] breach[] of its duty to control" NSJP. A-78 ¶ 146. Indeed, it appears to be Plaintiff's position that WESPAC's obligation was not to provide funding for the protest. *See* Plaintiff Br. at 34 ("WESPAC *did* eventually cut NSJP off.") (emphasis in original). But, given that Plaintiff does not allege that WESPAC actually provided such funding, WESPAC met that "obligation."  What further action could Plaintiff possibly be contending WESPAC failed to take in breach of its "obligation to prevent NSJP from engaging in illegal behavior"? *Id*. Travel to Chicago to physically stop NSJP members from going to O'Hare? If the law required that, fiscal sponsorship would quickly become a thing of the past.[8]

## III.  The District Court's Decision May Be Affirmed for Lack of Personal Jurisdiction Over WESPAC

WESPAC, a New York entity, argued for dismissal in the district court based on the nonexistence of personal jurisdiction. A-2. The issue was fully briefed below.  The court did not address that argument because it dismissed for other reasons.  A-9, n.4. This Court may affirm on that basis as well.  *See Perez v. Sims*, 662 F.3d 478, 480 (7th Cir. 2011) (appellate court "may

---

[8] WESPAC adopts the Tides Brief's argument about Plaintiff's lack of standing.

affirm on any ground supported in the record, 'so long as that ground was adequately addressed in the district court and the nonmoving party had an opportunity to contest the issue'").

The SAC says nothing that would support the exercise of personal jurisdiction over WESPAC. It failed to plead WESPAC did anything in Illinois or even directed at Illinois, and it offered no explanation as to personal jurisdiction in relation to WESPAC although it was Plaintiff's burden to make a prima facie showing of such jurisdiction. *E.g., Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).

Plaintiff argued below that because NSJP and WESPAC are legally indistinguishable and NSJP is subject to personal jurisdiction here,[9] *ipso facto* specific personal jurisdiction exists over WESPAC. As detailed above, there is no legal or factual basis for Plaintiff's position that NSJP and WESPAC are one and the same.

Indeed, Judge Wilson's recent opinion in California rejected the very proposition that WESPAC was *a priori* subject to personal jurisdiction simply because its fiscal sponsoree was said to be subject to personal jurisdiction there:

> Nothing in the Complaint suggests that the Sponsoring Defendants[10] purposefully directed any activities at California or otherwise availed themselves of the privileges of California. In other words, there are no allegations sufficient to support general or specific jurisdiction.
>
> There is only one link between the Sponsoring Defendants and California: the Sponsoring Defendants' fiscal sponsorship relationship with PYM. This is not enough for personal jurisdiction.

*Helmann*, 2025 WL 3030582, at *21.

Judge Wilson's opinion is entirely on point. Plaintiff here did not allege WESPAC did anything in or directed at Illinois. And if Plaintiff purports to rely still on WESPAC's fiscal

---

[9] We note that NSJP contests personal jurisdiction as well.
[10] WESPAC was one of two fiscal-"Sponsoring Defendants" there.

sponsorship of NSJP for personal jurisdiction, said position would be legally baseless, as Judge Wilson found.

The specific-jurisdiction inquiry is "defendant-focused," with an emphasis "on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014) (citation and quotation omitted).[11] "[T]he defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* at 284. "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co. v. Superior Court of Calif.*, 582 U.S. 255, 264 (2017). And a defendant must intentionally establish minimum contacts with the forum such that he or she "should reasonably anticipate being haled into court" there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

In specific terms, a plaintiff must show that: "(1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state, (2) the alleged injury must have arisen from the defendant's forum related activities, and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012). For intentional torts, this inquiry focuses on whether the plaintiff has shown: "(1) intentional conduct (or intentional and allegedly tortious conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Tamburo v. Dworkin*, 601 F.3d 693, 703 (7th Cir. 2010).

Whether analyzed under the rubric of purposeful availment "of the privilege of conducting business" in Illinois or conduct "expressly aimed" at Illinois, Plaintiff cannot make a prima facie

---

[11] Plaintiff did not argue general personal jurisdiction below, so we will not address that here.

showing. Plaintiff does not allege WESPAC took *any* action concerning the protest at issue, let alone an action that might constitute purposeful availment of the privilege of conducting business in Illinois or that was aimed at Illinois. Plaintiff also fails to allege WESPAC knew NSJP would engage in alleged conduct in Illinois or to adequately allege WESPAC had any reason to anticipate NSJP would engage in conduct here. Given this, it certainly cannot be said WESPAC could have "reasonably anticipate[d] being haled into court" in Illinois. *Burger King*, 471 U.S. at 474.

## CONCLUSION

This Court should affirm the dismissal of Plaintiff's SAC with prejudice.

Respectfully submitted,

Dated:  December 23, 2025

WESPAC Foundation, Inc.

By  /s/ Robert L. Herbst
   One of Its Attorneys

HERBST LAW PLLC
Robert L. Herbst
420 Lexington Avenue, Suite 300
New York, New York 10170
(914) 450-8163
rherbst@herbstlawny.com

*Attorney for Defendant-Appellee*
*WESPAC Foundation, Inc.*

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32(c) because, according to the word count function of Microsoft Office Word 365, this brief contains 4,997 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), and the parts stating that we are adopting portions of the Brief of Defendant Tides herein.

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Circuit Rule 32 and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 365 12 point Times New Roman Style for the main text and 11 point for the footnotes.

Dated:  December 23, 2025

/s/ Robert L. Herbst

Robert L. Herbst

## CIRCUIT RULE 30(d) STATEMENT

Pursuant to Circuit Rule 30(d), I, Robert L. Herbst, an attorney, certify that all materials required by Circuit Rule 30(a) and 30(b) are included in Plaintiff-Appellant's Required Short Appendix.

Dated: December 23, 2025

 /s/ Robert L. Herbst
Robert L. Herbst

**CERTIFICATE OF SERVICE**

I, Robert L. Herbst, an attorney, hereby certify that on December 23, 2025, I caused the **Brief of Defendant-Appellee WESPAC Foundation, Inc. in Opposition** to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Pursuant to ECF procedure (h)(2) and Circuit Rule 31(b), and upon notice of this Court's acceptance of the electronic brief for filing, I certify that I will cause 15 copies of the above-named brief to be transmitted to the Court via hand-delivery or UPS overnight delivery, delivery charge prepaid, within five days of that date.

Dated:  December 23, 2025

/s/ Robert L. Herbst

Robert L. Herbst