No. 25-2382

## THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

CHRISTOPHER MANHART, individually and
on behalf of all others similarly situated,
*Plaintiff-Appellant,*
v.
WESPAC FOUNDATION, INC., *et al.,*
*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, No. 1:24-cv-8209 (Rowland, J.)

## SUPPLEMENTAL BRIEF OF DEFENDANTS-APPELLEES

Robert L. Herbst
HERBST LAW PLLC
420 Lexington Avenue, Suite 300
New York, NY 10170
(914) 450-8163
rherbst@herbstlawny.com
*Counsel for WESPAC Foundation Inc.*

Nora Snyder
Brad Thomson
PEOPLE'S LAW OFFICE
1180 North Milwaukee Avenue
Chicago, IL 60642
(773) 235-0070
norasnyder@peopleslawoffice.com

Dan Stormer
Hanna Chandoo
Bina Ahmad
HADSELL STORMER RENICK & DAI, LLP
128 North Fair Oaks Avenue
Pasadena, CA 91103
(626) 585-9600
dstormer@hadsellstormer.com
*Counsel for Jewish Voice for Peace*

Andrianna D. Kastanek
Precious S. Jacobs-Perry
Ali I. Alsarraf
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654
(312) 222-9350
akastanek@jenner.com
*Counsel for Tides Center*

Joshua G. Herman
LAW OFFICE OF JOSHUA G. HERMAN
53 West Jackson Boulevard, Suite 404
Chicago, IL 60604
(312) 909-0434
jherman@joshhermanlaw.com
*Counsel for National Students for Justice in
Palestine*

Amanda S. Yarusso
AMANDA S. YARUSSO
1180 North Milwaukee Avenue
Chicago, IL 60642
(773) 510-6198
amanda.yarusso@gmail.com
*Counsel for Jinan Chehade, Superior Murphy,
Rifqa Falaneh, Simone Tucker, and Dissenters*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................ii

INTRODUCTION .............................................................................................. 1

ARGUMENT ..................................................................................................... 2

I.  Plaintiff Has Failed to Show a Non-Speculative Basis for Federal Jurisdiction Under 28 U.S.C. § 1332(d)(2) ......................................... 2

    A.  Plaintiff Has Failed to Plausibly Allege Numerosity. ........................... 3

    B.  Plaintiff Has Failed to Demonstrate a Sufficient Amount in Controversy ..................................................................................... 7

II. Amendment of the Complaint is Futile........................................................ 12

CONCLUSION................................................................................................. 14

i

# TABLE OF AUTHORITIES

**CASES**

*Abdullah v. Milo's Poultry Farms, LLC,*
No. 24-CV-1400, 2025 WL 1567467 (E.D. Wis. June 3, 2025) ........................ 4, 5, 9

*Atteberry v. Esurance Insurance Services, Inc.,*
473 F. Supp. 2d 876 (N.D. Ill. 2007) .................................................................... 5

*Dancel v. Groupon, Inc.,*
940 F.3d 381 (7th Cir. 2019) ......................................................................... 4, 11

*Dart Cherokee Basin Operating Co., LLC v. Owens,*
574 U.S. 81 (2014) ............................................................................................... 2

*Diefenthal v. Civil Aeronautics Board,*
681 F.2d 1039 (5th Cir. 1982) ....................................................................... 8, 12

*DiTolla v. Doral Dental IPA of New York, LLC,*
469 F.3d 271 (2d Cir. 2006) ................................................................................. 4

*Ibarra v. Manheim Investments, Inc.,*
775 F.3d 1193 (9th Cir. 2015) ............................................................................. 4

*Mathias v. Accor Economy Lodging, Inc.,*
347 F.3d 672 (7th Cir. 2003) ................................................................... 9, 10, 11

*Morrison v. Allstate Indemnity Co.,*
228 F.3d 1255 (11th Cir. 2000) ......................................................................... 13

*Munro v. Golden Rule Insurance Co.,*
393 F.3d 720 (7th Cir. 2004) ............................................................................. 10

*Oppenheimer Fund, Inc. v. Sanders,*
437 U.S. 340 (1978) ........................................................................................... 11

*Sabrina Roppo v. Travelers Commercial Insurance,*
869 F.3d 568 (7th Cir. 2017) ............................................................................... 3

*Saccameno v. U.S. Bank National Ass'n,*
943 F.3d 1071 (7th Cir. 2019) ....................................................................... 9, 11

*Silha v. ACT, Inc.*,
   807 F.3d 169 (7th Cir. 2015) ................................................................. 3

*State Farm Mutual Automobile Insurance Co. v. Campbell*,
   538 U.S. 408 (2003) ............................................................................. 9

*Ware v. Best Buy Stores, L.P.*,
   6 F.4th 726 (7th Cir. 2021) ...................................... 3, 4, 7, 8, 13

**STATUTES AND RULES**

28 U.S.C. § 1332(d) ...................................................................... 2, 3

28 U.S.C. § 1332(d)(2) ................................................................. 1, 3

28 U.S.C. § 1332(d)(5)(B) .................................................................. 3

28 U.S.C. § 1653 ......................................................................... 2, 12

Fed. R. Civ. P. 23(a)(3) .................................................................... 5

# INTRODUCTION

After oral argument, this Court directed the parties to file supplemental briefs addressing "the existence of subject-matter jurisdiction under 28 U.S.C. §1332(d)." Dkt. 89. The Court further instructed the parties to address both the numerosity and amount-in-controversy requirements under that statute. *Id.*

Plaintiff invoked federal subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), and so bears the burden of satisfying its requirements. One such requirement is that the class he seeks to represent is comprised of at least 100 members (numerosity). Another is that the total amount in controversy exceeds $5 million. Plaintiff has shown neither.

Although Plaintiff makes conclusory allegations that the putative class includes over 1,000 members and the amount in controversy exceeds $5 million, he offers no factual basis on which this Court could conclude as much. On numerosity, he provides no estimates whatsoever as to the total number of similarly situated drivers, let alone the assumptions necessary to estimate the subset of those drivers who are non-Illinois residents. On amount in controversy, Plaintiff fares no better. The operative complaint alleges injuries in the form of inconvenience and loss of time spent sitting in traffic; it does not allege even a penny of plausible monetary loss. Yet Plaintiff asks this Court to take his word for it that aggregate damages would exceed $5 million. Doing so would impermissibly allow guesswork to supplant the factual basis necessary for exercising federal subject matter jurisdiction.

Any attempt by Plaintiff to amend his jurisdictional allegations on appeal under 28 U.S.C. § 1653 should be rejected as futile. No amendment can cure what is wrong here. The class, as Plaintiff has chosen to define it, cannot plausibly reach 100 ascertainable members or $5 million in aggregate damages. Plaintiff has no non-speculative basis to estimate the number of non-Illinois residents who were stuck in traffic on I-190 on April 15, 2024, and no non-speculative basis to estimate how many of those non-Illinois residents suffered *any* compensatory harm at all—let alone harm that aggregates to the statutory threshold of $5 million. Jurisdiction cannot rest on conjecture, and amendment cannot transform conjecture into fact.

Prolonging this litigation would be a waste of both judicial and party resources. The Court should vacate the district court's judgment and remand with instructions to dismiss for lack of subject matter jurisdiction. In the alternative, should this Court conclude that jurisdiction exists, Defendants respectfully request that the Court affirm the dismissal on the grounds stated in Defendants' original briefs.

## ARGUMENT

### I. Plaintiff Has Failed to Show a Non-Speculative Basis for Federal Jurisdiction Under 28 U.S.C. § 1332(d)(2).

In the operative second amended verified complaint, A45–81 ("SAC"), Plaintiff invoked federal subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d). SAC ¶¶ 9–10. That provision, enacted in 2005 "to facilitate adjudication of certain class actions in federal court," *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014), "expands jurisdiction for diversity class actions by creating federal subject matter jurisdiction if: (1) a class has 100 or more

class members; (2) at least one class member is diverse from at least one defendant ('minimal diversity'); *and* (3) there is more than $5 million, exclusive of interest and costs, in controversy in the aggregate," *Sabrina Roppo v. Travelers Com. Ins.*, 869 F.3d 568, 578 (7th Cir. 2017) (citing 28 U.S.C. § 1332(d)). Plaintiff bears the burden of plausibly alleging that each statutory requirement—including numerosity and amount-in-controversy—is satisfied. *See Ware v. Best Buy Stores, L.P.*, 6 F.4th 726, 731–32 (7th Cir. 2021); *see also Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015) ("[W]hen evaluating a facial challenge to subject matter jurisdiction under Rule 12(b)(1), a court should use *Twombly–Iqbal*'s 'plausibility' requirement.").

Plaintiff has made the requisite showing of minimal diversity by alleging that he is a citizen of Indiana, SAC ¶ 12, whereas Tides Center is a California corporation with its principal place of business in California, *id.* ¶ 17. However, Plaintiff has failed to plausibly show that the putative class is comprised of at least 100 people, 28 U.S.C. § 1332(d)(5)(B), or that the aggregate amount in controversy exceeds $5 million, 28 U.S.C. § 1332(d)(2). While Plaintiff offers conclusory assertions that these requirements are satisfied, SAC ¶ 10, his speculation does not supply jurisdiction.

### A.    Plaintiff Has Failed to Plausibly Allege Numerosity.

The operative complaint baldly asserts that "[t]here are over a thousand Class Members," SAC ¶ 10; *see also id.* ¶ 84, which, if true, would satisfy § 1332(d)'s 100-person minimum class size. But the class Plaintiff seeks to represent includes only "non-Illinois residents who were either drivers or passengers of vehicles traveling on the morning of April 15, 2024, between the hours of 7:00 a.m. and 10:00 a.m. in

Chicago, Illinois on Interstate 190 and nearby highways that connect to Interstate 190, who were confined in their vehicles because of the activists blockading traffic on Interstate 190 as it approaches the terminals at O'Hare International Airport." SAC ¶ 80. Fatally, Plaintiff offers no factual basis for inferring that more than 100 people fall within his narrow class definition.

As this Court has explained, federal jurisdiction cannot rest upon a "guess" that jurisdictional requirements are met, "educated and sensible though it may be." *Dancel v. Groupon, Inc.*, 940 F.3d 381, 385 (7th Cir. 2019). For instance, in *Dancel*, the Court held that a notice of removal alleging that some "undetermined number" of class members were "non-Illinois and non-Delaware citizens" failed to satisfy § 1332(d)(2)'s diversity requirement—the defendants had improperly "rested on ... speculation that 'undoubtedly' a class member is a citizen of a state other than Illinois or Delaware." *Id.* The same defect defeated the jurisdictional showing in *Ware*: Because the plaintiffs' complaint and supplemental filings "d[id] not actually make any specific factual allegations or assertions on that point," the Court concluded that "any inference that the amount in controversy exceeds $5 million would be entirely speculative." 6 F.4th at 733.[1]

---

[1] Courts across the country have likewise rejected attempts to invoke § 1332(d)(2) jurisdiction on speculation alone. *See e.g.*, *DiTolla v. Doral Dental IPA of New York, LLC*, 469 F.3d 271, 277 (2d Cir. 2006) (jurisdiction lacking where court could not "say beyond mere speculation" that damages would exceed $5 million); *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (jurisdiction under § 1332(d) cannot be established "by mere speculation and conjecture, with unreasonable assumptions"); *Abdullah v. Milo's Poultry Farms, LLC*, No. 24-CV-1400, 2025 WL 1567467, at *3 (E.D. Wis. June 3, 2025) (jurisdiction lacking where "[a]ny inference that the amount in controversy here exceeds $5 million is entirely speculative");

Here, to reach 100 class members, Plaintiff would have to allege a plausible estimate of the total number of similarly situated motorists, as well as some non-speculative basis for concluding that the subset of those motorists who hail from outside Illinois exceeds 100. He has failed on both fronts.

1. Regarding the total number of similarly situated motorists, the only concrete factual allegation of any relevance is that the protest resulted in traffic for approximately two and a half hours. SAC ¶¶ 71, 95. But the complaint is silent as to the number of persons affected, the number of lanes of traffic on that particular stretch of highway, or the number of miles the traffic allegedly stretched, *cf. id.* ¶ 71 (alleging the impacted motorists stretched for an unspecified number of "miles"), thus precluding even a plausible back-of-the-envelope estimate.

The alleged facts also tell this Court nothing about which affected drivers are similarly situated to Plaintiff in ways that class certification would demand. *See* Fed. R. Civ. P. 23(a)(3) (requiring that "the claims or defenses of the representative parties are typical of the claims or defenses of the class"); *Abdullah v. Milo's Poultry Farms, LLC*, No. 24-CV-1400, 2025 WL 1567467, at *2 (E.D. Wis. June 3, 2025) (declining to consider claims that "appear atypical of the claims that [plaintiff] seeks to represent" as part of jurisdictional analysis under § 1332(d)). Plaintiff expressly acknowledges that his claims must be "typical of all the members of the Class," SAC ¶ 86, but nonetheless offers no allegations about the distance between the protest and the

---

*Atteberry v. Esurance Ins. Servs., Inc.,* 473 F. Supp. 2d 876, 877–78 (N.D. Ill. 2007) (same where size of potential class and possibility of recovery in excess of $5 million jurisdictional minimum was too speculative).

nearest opportunity for a driver to divert their route and avoid the traffic altogether—the only stretch of the highway to which Plaintiff's theory of injury could plausibly extend, if the Court were to find it valid. Nor does Plaintiff offer any estimate of how many people were in rideshares as opposed to their own vehicles or how many people chose to remain in their own vehicles rather than walk to the terminals, despite acknowledging that an unspecified number of people chose the latter, *id.* ¶ 75. Finally, notwithstanding counsel's statement during oral argument that the Court can tally more than one person per car because the class encompasses passengers, in addition to drivers, Audio Recording of Oral Argument at 2:20-40 (7th Cir. Apr. 9, 2026) ("Oral Argument"), passengers are not similarly situated to Plaintiff. Plaintiff rests his claims in part on the implicit notion that he was alone and driving his own vehicle (as he contends he could not leave his vehicle unattended on the highway); passengers or those with other eligible drivers in their cars necessarily would not share any such claims.

2. Regarding the number of similarly situated motorists from states other than Illinois, the operative complaint is silent. Plaintiff's counsel stated his position at oral argument that "half of the people going to O'Hare" were "not from Chicago." Oral Argument at 1:20-30. But that allegation is found nowhere in the operative complaint and, in any event, would be irrelevant. Under Plaintiff's own class definition, SAC ¶ 80, the relevant question is how many people reside outside *Illinois*, not outside Chicago. And as Plaintiff's counsel conceded at oral argument, if one were to stand on an overpass spanning I-190 and look at the license plates of passing cars,

"not that many" of the cars would have license plates from outside Illinois. Oral Argument Tr. at 1:30-51.

In short, Plaintiff has supplied no non-speculative basis on which this Court could conclude that there are at least 100 members of the class he seeks to represent.

**B.      Plaintiff Has Failed to Demonstrate a Sufficient Amount in Controversy.**

Although Plaintiff asserts that "the aggregate amount in controversy exceeds Five Million Dollars ($5,000,000) exclusive of interests and costs," SAC ¶ 10, he fails to offer any factual basis for concluding as much. This failure is an independently fatal jurisdictional defect. *See Ware*, 6 F.4th at 733.

 Plaintiff alleges that, as a result of the protest, he experienced traffic for "over an hour," SAC ¶ 76, "miss[ed] his flight," and "spent the next several hours at the airport adjusting his travel plans." *Id*. ¶ 6. He further alleges that, although he ultimately reached his intended destination that same day, he "missed an important work dinner and networking function." *Id*. Regarding damages, Plaintiff alleges he suffered "[l]oss of personal freedom," "[l]ost business opportunities," "[a]nnoyance, inconvenience, and physical discomfort; anxiety and emotional distress," *id*. ¶ 96, and "[l]oss of time having to rearrange travel plans after missing his flight," *id*. ¶ 108.

Conspicuously absent from the operative complaint are any allegations that support monetary damages for any of these alleged harms. While a court owes some deference to a plaintiff's plausible amount-in-controversy allegations and should dismiss a properly pled damages suit for lack of jurisdiction only when "it is legally impossible for the plaintiff to recover [the requisite amount in controversy]," *Ware*, 6

F.4th at 732 (quoting *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008)), "a court would be remiss in its obligations if it accepted every claim of damages at face value, no matter how trivial the underlying injury," *Diefenthal v. Civil Aeronautics Bd.,* 681 F.2d 1039, 1052 (5th Cir. 1982). Here, although Plaintiff alleges that he missed a flight and had to re-book, he does not claim that he forfeited the cost of the original ticket or even had to pay a rebooking fee. Nor does he allege that any putative class member seeks to recover any such monetary damages; to the contrary, he asserts that all "damages" sought by putative class members are "of the same type" as his own, SAC ¶ 87—namely, annoyance, inconvenience, and loss of time.

Even assuming there are 100 putative class members, clearing the $5 million threshold would require damages exceeding $50,000 per person due to the inconvenience of—at most—a single morning of traffic. No factual allegations in the operative complaint support that relief. Again, it does not allege even a penny of plausible monetary damage. It does not supply estimates of the value of the alleged lost time. Even setting aside that it does not allege Plaintiff was charged any fee, the operative complaint does not attempt to quantify the cost to other putative class members of rebooking missed flights. And it contains no allegations as to the average damages awarded by Illinois courts under analogous circumstances. In short, "any inference that the amount in controversy exceeds $5 million would be entirely speculative" because the complaint "do[es] not actually make any specific factual allegations or assertions on that point." *Ware*, 6 F.4th at 733.

Plaintiff's request for punitive damages does not resolve the amount-in-

controversy defect. Due process generally precludes an award exceeding a "single-digit ratio between punitive and compensatory damages." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425, (2003); *Saccameno v. U.S. Bank Nat'l Ass'n*, 943 F.3d 1071, 1088, 1090 (7th Cir. 2019) ("few awards exceeding a single-digit ratio [of punitive damages to compensatory damages] 'to a significant degree' will satisfy due process" (citation omitted)). It beggars belief that the putative class could reasonably recover an average of $50,000 per person, even accounting for punitive damages, without alleging even a penny of actual damages. *See Abdullah*, 2025 WL 1567467, at *2–3 (amount-in-controversy requirement in § 1332(d) not established because "there is no plausible way that a claim involving less than $100,000 worth of eggs could result in punitive damages of more than $4.9 million").

At oral argument, Plaintiff's counsel claimed that punitive damages could bring the amount in controversy across the $5 million threshold, noting that this Court once approved $186,000 in punitive damages for reckless conduct. Defendants understand Plaintiff's counsel to be referring to *Mathias v. Accor Economy Lodging, Inc.*, 347 F.3d 672 (7th Cir. 2003), where the jury awarded $5,000 in compensatory damages and $186,000 in punitive damages to each plaintiff for a hotel's willful and wanton conduct associated with a bedbug infestation. *Id.* at 673–74; *see* Oral Argument at 39:14-30. This Court affirmed the punitive-damages award as constitutionally permissible under the highly particularized circumstances presented there—including a defendant that knowingly concealed the ongoing infestation (which was of "farcical proportions") to avoid closure costs, inflicting modest but real

harm across a large and identifiable population of hotel guests whose injuries were too small to litigate individually. *Mathias*, 347 F.3d at 674–77.

*Mathias* does not support an outsized punitive award here, and in fact the comparison cuts sharply the other way. The *Mathias* ratio was justified by a confluence of factors entirely absent from this case. This Court has identified *Mathias* as an exception applicable only where there is "widespread injury" to "hundreds of people," the severity of which can override the "presumption against punitive damages that are a double-digit multiple of the compensatory injury." *Munro v. Golden Rule Ins. Co.*, 393 F.3d 720, 722 (7th Cir. 2004). Here, there is no "widespread injury" akin to a bedbug infestation. In fact, Plaintiff has not identified *any* compensable injury to him or anyone else, and he cannot quantify the harm he or anyone else allegedly suffered. Moreover, even if such a compensable injury were pled here, the class action vehicle would already account for the full scope of alleged injuries; unlike in *Mathias*, an outsized punitive award is not justified by harms to "hundreds of people" whose injuries are not captured in the compensatory damages figure. *Id.*

There are other distinctions, too. The *Mathias* defendant actively concealed its misconduct—relabeling bedbugs as ticks, renting rooms on do-not-rent status, refusing fumigation to avoid closure costs—and was making money by perpetuating the wrong. 347 F.3d at 674–75. The punitive rationale in *Mathias* rested on the need to strip profits from fraud specifically designed to evade detection. Nothing of the sort happened here. There is no concealment dynamic alleged and no profit motive to

deter. The *Mathias* infestation was also continuous and systemic, creating ongoing risk to future guests over an extended period. A single bounded act of alleged confinement from a protest presents no comparable ongoing and continuous threat. Finally, the *Mathias* court calibrated the award in part against the defendant's exposure to license revocation and compounding criminal liability across hundreds of affected guests—a regulatory overlay with no analog here. *Id.* at 678.

In short, an award of more than $5 million here would be "well beyond that necessary to deter," rendering it constitutionally impermissible. *Saccameno*, 943 F.3d at 1086, 1090 (holding $3 million in punitive damages relative to $582,000 in compensatory damages exceeded constitutional limits and reducing the award to a 1:1 ratio).

\* \* \*

To the extent Plaintiff seeks jurisdictional discovery to cure these defects, the Court should not allow it. While this Court has in the past allowed jurisdictional discovery in cases removed to federal court under § 1332 (*e.g., Dancel,* 940 F.3d at 386 (rejecting the Eleventh Circuit's categorical prohibition on jurisdictional discovery in such cases); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978)), it need not entertain jurisdictional discovery where it is "not convinced" that the party invoking § 1332 "c[ould] carry its burden," *Dancel*, 940 F.3d at 386, as is the case here.

*Dancel* illustrates the point. There, jurisdictional discovery was permitted because the removing defendant lacked access to evidence bearing on class size and

11

amount in controversy—evidence uniquely within the plaintiff's control, obtainable through requests for admission or other targeted discovery. That asymmetry justified the inquiry. Here, the asymmetry is reversed: Plaintiff defined the class, Plaintiff chose the claims, and Plaintiff bears the burden of establishing jurisdiction. If anyone has access to facts supporting the jurisdictional thresholds, it is Plaintiff. The absence of any such allegations from the complaint is not a discovery problem.

## II.    Amendment of the Complaint is Futile

To the extent Plaintiff seeks to amend his jurisdictional allegations on appeal under 28 U.S.C. § 1653, the Court should reject the attempt as futile. Amendment cannot conjure jurisdiction where none exists—and whatever Plaintiff might allege, the deficiencies here are not pleading failures that better draftsmanship might cure. They are substantive failures that reflect the flawed nature of the class Plaintiff has chosen to define. *See Diefenthal,* 681 F.2d at 1052 ("Jurisdiction is not conferred by the stroke of a lawyer's pen. When challenged, it must be adequately founded in fact.").

Again, on numerosity, Plaintiff has no non-speculative basis to allege that the proposed class contains at least 100 members. The second amended complaint identifies no facts that would permit a plausible estimate of how many non-Illinois residents were caught in the traffic delay at issue, let alone how many of those non-Illinois residents might satisfy the class definition Plaintiff has advanced. Any amendment purporting to supply that number would rest on conjecture, not facts, and conjecture does not satisfy the plausibility standard that governs jurisdictional

allegations. *See Ware*, 6 F.4th at 733; *see also Morrison v. Allstate Indem. Co.,* 228 F.3d 1255, 1272–73 (11th Cir. 2000) ("Jurisdiction cannot be established by a hypothetical.").

The amount-in-controversy deficiency is even more fundamental. Plaintiff alleges inconvenience—delay, frustration, lost time. He does not allege, because he cannot, that putative class members suffered quantifiable monetary harm. Without a non-speculative basis to allege that any individual class member suffered compensable damages, there is no non-speculative basis to allege that the aggregate damages of a class—however large—exceed $5 million. Amendment cannot transform an inconvenience claim into a federal case simply by multiplying an unsubstantiated damages figure by an unsubstantiated class size.

**CONCLUSION**

For the reasons stated above, this Court should vacate the district court's judgment and remand with instructions to dismiss for lack of subject matter jurisdiction. In the alternative, should this Court conclude that jurisdiction exists, Defendants respectfully request that the Court affirm the dismissal of Plaintiff's complaint with prejudice on the grounds stated in their original briefs.

Dated: April 23, 2026

Respectfully submitted,

By: /s/ Robert L. Herbst
Robert L. Herbst
HERBST LAW PLLC
420 Lexington Avenue, Suite 300
New York, NY 10170
(914) 450-8163
rherbst@herbstlawny.com
*Counsel for Defendant-Appellee*
*WESPAC Foundation Inc.*

By: /s/ Nora Snyder
Nora Snyder
Brad Thomson
PEOPLE'S LAW OFFICE
1180 North Milwaukee Avenue
Chicago, IL 60642
(773) 235-0070
norasnyder@peopleslawoffice.com
brad@peopleslawoffice.com

Dan Stormer
Hanna Chandoo
Bina Ahmad
HADSELL STORMER RENICK & DAI, LLP
128 North Fair Oaks Avenue
Pasadena, CA 91103
(626) 585-9600
dstormer@hadsellstormer.com
hchandoo@hadsellstormer.com
bahmad@hadsellstormer.com
*Counsel for Defendant-Appellee*
*Jewish Voice for Peace*

By: /s/ Andrianna D. Kastanek
Andrianna D. Kastanek
Precious S. Jacobs-Perry
Ali I. Alsarraf
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654
(312) 222-9350
akastanek@jenner.com
pjacobs-perry@jenner.com
aalsarraf@jenner.com
*Counsel for Defendant-Appellee*
*Tides Center*

By: /s/ Joshua G. Herman
Joshua G. Herman
LAW OFFICE OF JOSHUA G. HERMAN
53 West Jackson Boulevard, Suite 404
Chicago, IL 60604
(312) 909-0434
jherman@joshhermanlaw.com
*Counsel for Defendant-Appellee*
*National Students for Justice in Palestine*

By: /s/ Amanda S. Yarusso
AMANDA S. YARUSSO
1180 North Milwaukee Avenue
Chicago, IL 60642
(773) 510-6198
amanda.yarusso@gmail.com
*Counsel for Defendants-Appellees Jinan*
*Chehade, Superior Murphy, Rifqa Falaneh,*
*Simone Tucker, and Dissenters*

**CERTIFICATE OF COMPLIANCE WITH FED R. APP. P. 32(a)(7)**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32(c) because, according to the word count function of Microsoft Office Word 365, this brief contains 3,476 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), Circuit Rule 32(b), and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally-spaced typeface using Microsoft Word 365 in 12-point Century Schoolbook font for the main text and for footnotes.

Dated: April 23, 2025

/s/ Andrianna D. Kastanek
Andrianna D. Kastanek

**CERTIFICATE OF SERVICE**

I, Andrianna D. Kastanek, an attorney, hereby certify that on April 23, 2026, I caused the **Supplemental Brief of Defendants-Appellees** to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Pursuant to ECF procedure (h)(2) and Circuit Rule 31(b), and upon notice of this Court's acceptance of the electronic brief for filing, I certify that I will cause ten (10) copies of the above named supplemental brief to be transmitted to the Court via UPS overnight delivery, delivery charge prepaid, within five days of that date.

/s/ Andrianna D. Kastanek
Andrianna D. Kastanek